No. 3183

Second Circuit

WILLHITE v. HARTFORD FIRE INS. CO.

(May 22, 1928. Opinion and Decree.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Insurance—Par. 177.**
Parol evidence is admissible to prove that an answer to a question in an application for fire insurance written by an agent of the insurer was the reverse of that dictated to him by the assured.
Parker vs. Citizens Fire Insurance Co., 4 La. App. 711.

2. **Louisiana Digest—Insurance—Par. 72.**
An insurer cannot avoid its policy of fire insurance because of a misstatement in the application for it, material to the risk, but due to mistake or negligence on the part of its agent and not to fraud or bad faith of the assured.
Ibid.

Appeal from the Fourth Judicial District Court, Parish of Ouachita. Hon. J. T. Shell, Judge.

Action by John W. Willhite against The Hartford Fire Insurance Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

McHenry, Montgomery, Maling and Lamkin, of Monroe, attorneys for plaintiff, appellee.

J. C. Hollingsworth, of New Orleans, attorney for defendant, appellant.

## STATEMENT OF THE CASE

REYNOLDS, J. This suit is to recover $843.75, with legal interest thereon from judicial demand, and 12 per cent on the sum of $1,125.00 (or $135.00), and $250.00, as attorney's fees, on a policy of fire insurance for $1,000.00 issued by defendant to plaintiff, covering a one-story frame shingle roof dwelling house, $650.00, household and kitchen furniture therein, $250.00, barn and sheds, $100.00.

Plaintiff alleges that the insured property was destroyed by fire on October 13, 1926, during the life of the policy, that it was worth $1,125.00, and that defendant is liable under the policy for three-fourths of that amount, or $843.75, legal interest thereon, 12 per cent on the $1,125.00, and $250.00 as attorney's fees.

The defense is that the policy was void *ab initio* because plaintiff induced defendant to issue it by representing to defendant in writing over his signature in answer to the question put to him by it:

"Is any of your property, real or personal, under mortgage, lien or incumbrance? If so, state how, to what amount, and when due."

that none of it was under mortgage, lien or incumbrance.

That the answer was a warranty and that relying thereon defendant issued the policy sued on and would not have done so but for plaintiff's representation; and "your defendant shows that there were mortgages on the said property at the time of the application, and continuously thereafter, to the time of the fire, and had plaintiff made known this fact to your defendant, that your defendant would not have issued its form of policy to this plaintiff, * * * "

On these issues the case was tried and there was judgment in favor of the plaintiff

and against defendant as prayed for, and defendant appealed.

## OPINION

The only question presented for our determination is whether or not plaintiff procured the issuance of the policy sued on to him by fraud or misrepresentation.

Plaintiff made written application to defendant for the policy and signed the application. Among others, the following question and answer appear in the application:

"Q. Is any of your property, real or personal, under mortgage, lien, or incumbrance? If so, state how, to what amount and when due?
"A. No."

J. B. Thompson, defendant's solicitor, who took plaintiff's application for the policy, testified that he read plaintiff the question and that plaintiff gave the answer and that he wrote it down as given.

Plaintiff swears, on the contrary, that he did not make the answer "no" to the question and did not know it had been so written; that he told defendant's solicitor that the property was under mortgage to the Federal Land Bank and that he signed the application in the belief that it so stated.

He testified:

"Q. Was anything discussed between you and Mr. Thompson relative to mortgages on your farm?
"A. Yes, sir; he asked me if I had any mortgage, while we were having that conversation—no, it was when he was filling out this blank—he asked me if I had any mortgages on my place, and I told him I had $450.00 in the Federal Land Bank.
"Q. Where did this conversation take place?
"A. On my front porch.
"Q. Was any one present besides you and Mr. Thompson?

"A. Yes, sir.
"Q. Who?
"A. Charley Whitehead and my wife and Mrs. Susie Aulds.
* * * *
"Q. What did you tell him, with reference to mortgages on your property?
"A. I told him that the Federal Land Bank had a $450.00 mortgage against my property, my land. I said: 'I don't know, I built this house two years later after I had taken out the mortgage, and I don't know whether they have a mortgage on my house or not.' I said: 'You might know, but I don't know whether they have or not. They have a $450.00 mortgage against my land and this house is on the land'; that's just what I told him."

Mrs. John W. Willhite testified:

"Q. Do you recall when Mr. Thompson came to your home?
"A. Yes, sir.
* * * *
"Q. Were you present when Mr. Thompson discussed with your husband about taking out some insurance?
"A. Yes, sir.
"Q. State what your husband told Mr. Thompson with regard to the mortgages on his property?
"A. He told him that the Federal Land Bank had a four hundred dollar mortgage against the property.
"Q. Who else was present at the time your husband and Mr. Thompson were discussing the taking out of insurance?
"A. Mrs. Aulds and Mr. Whitehead.
* * * *
"Q. All you can remember was that he talked about a four hundred dollar mortgage to the Federal Land Bank?
"A. Yes, sir; he absolutely told him that."

Mrs. Susie Aulds testified:

"Q. Were you present at Mr. Willhite's house on or about May 5, 1926, when Mr. Thompson and Mr. Willhite were discussing the matter of some insurance?
"A. Yes, sir, I was.
* * * *
"Q. What was the conversation between Mr. Thompson and Mr. Willhite relative to mortgages on the property of Mr. Willhite?
"A. Mr. Willhite told him that the

Federal Land Bank had a mortgage against it.

"Q. Mr. Willhite told him that the Federal Land Bank had a mortgage against it?

"A. Yes, sir.

"Q. Who else were present during the conversation, Mrs. Aulds?

"A. There were myself, Mrs. Willhite, Mr. Whitehead, and Mr. Willhite."

Charley Whitehead testified:

"Q. Were you present at the home of Mr. Willhite during the conversation between Mr. Willhite and Mr. Thompson, during the month of May, 1926?

"A. Yes.

"Q. Mr. Whitehead, please state what you know or what you heard during the conversation between Mr. Willhite and Mr. Thompson, relative to mortgages on Mr. Willhite's place?

"A. He told him that he had a mortgage on the place.

"Q. Did he state in whose favor that mortgage was?

"A. He said the Federal Land Bank."

Thus we have the positive testimony of four witnesses testifying on behalf of plaintiff that plaintiff did disclose to defendant's agent the fact that the insured property was mortgaged against the equally positive testimony of one witness testifying on behalf of defendant that plaintiff did not.

The trial Judge, who saw and heard the witnesses testify, accepted as correct the testimony of plaintiff's four witnesses. Defendant's agent might well have been mistaken as to plaintiff's answer to his question concerning mortgages on the property. It is altogether more probable that defendant's agent was mistaken than that Mrs. Willhite, Mrs. Aulds, Mr. Whitehead and plaintiff himself were.

Defendant insists that the testimony of its witness, Thompson, is corroborated by the signed application of plaintiff. While plaintiff signed the application he did not write the answers in it. That was done by plaintiff's agent. And we think the evidence shows that plaintiff had confidence in defendant's agent and signed the application without reading it, believing that the agent had understood him and that his answers to the questions in the application had been written in as he gave them. The evidence shows that plaintiff was reluctant to buy the insurance and that he only consented to do so after urgent solicitation by defendant's agent. As plaintiff was not seeking the insurance but was being urged to apply for it, manifestly there was no occasion for him to misrepresent the facts as to mortgages on the property even if he had been disposed to do so.

There was apparently another mortgage on plaintiff's property given to secure the payment of a note for $500.00 signed by him dated January 7, 1919, but Mr. Oliver B. Morton, vice-president of the Ouachita National Bank, testified that at the time of the giving of that mortgage he was connected with the Citizens National Bank and that the note was negotiated by plaintiff to that bank and that the note was paid by plaintiff on January 16, 1922, and that it remained in the custody of the bank until after the fire when plaintiff went and got it and had the mortgage securing its payment cancelled on the record.

Defendant insists that parol evidence was inadmissible to contradict the written answers contained in plaintiff's signed application for the insurance, but we think it was admissible to show that the answer to the question about mortgages on the property as written was incorrect in view of the fact that the answer was not written by plaintiff himself but by defendant's agent.

Parker vs. Citizens Fire Ins. Co., 4 La. App. 711.

The evidence convinces us that plaintiff did not misrepresent the facts to plaintiff's agent and that the loss sustained by him was an honest one. Defendant cannot escape liability under the policy because of the error of its agent in writing in the application plaintiff's answer to the question concerning mortgages.

Finding no error in the judgment appealed from it is accordingly affirmed.