## GENERAL FINANCE CO. OF LOUISIANA, Inc., v. UNIVERSAL AUTOMOBILE INS. CO.*

### No. 13940.

Court of Appeal of Louisiana.    Orleans.

Jan. 11, 1932.

Prowell, McBride & Ray, of New Orleans, for appellant.

Leslie P. Beard and C. A. Peyronnin, both of New Orleans, for appellee.

HIGGINS, J.

This is a suit by a finance company, which deals in notes secured by chattel mortgages on automobiles, against an insurance company, claiming that it is the beneficiary under a "loss payable clause" in a policy of theft insurance issued by the defendant on December 10, 1929, to one Michael F. Cross, covering an 8-cylinder Gardner automobile, upon which plaintiff holds a chattel mortgage in the sum of $1,057.72. The petition alleges that the automobile was stolen on December 15, 1929, and prays for judgment against the defendant for the amount of its chattel mortgage note of $1,057.72, with legal interest from judicial demand, and 25 per cent. as damages because of the defendant's illegal refusal to pay plaintiff within sixty days after proof of loss was filed, and also a reasonable attorney's fee, under the provisions of Act No. 59 Extra Sess. of 1921.

Defendant admits the existence and issuance of the policy of insurance, but denied all of the other allegations of the petition. Defendant also specially pleaded that the policy is null and void, due to the fact that it was obtained by fraud, as the insured made

*Rehearing denied March 7, 1932. Writ of certiorari denied by Supreme Court, March 30, 1932.

false statements of fact of a material character, which constituted a breach of warranties; that the false statements were made for the purpose of inducing defendant to issue the policy, and that, had defendant known that the statements of the said insured were untrue, the policy would not have been issued; that the said misstatements were that the car insured was a new car, purchased during December, 1929, for $2,195, when in truth the automobile was a secondhand one, purchased during November, 1929, for the sum of $1,550.

The judge of the trial court dismissed plaintiff's suit on the ground that it was the duty of Cross, the insured, when the policy came into his possession, to have read it and to have advised the insurance company of the errors contained in the policy, and, having failed to do so, he thereby lost all rights under it, and that plaintiff enjoyed no greater right than the insured. Plaintiff has appealed.

The record shows that Michael Cross was a trainman by occupation and had a friend by the name of G. B. Black, who was an automobile salesman, and formerly engaged as a life insurance salesman. Black was also a friend of one John Maher, who was an insurance salesman connected with the office of Miller & King, insurance brokers. When Black sold an automobile, he advised the purchaser to place the insurance of the car with Mr. Maher, who attended to the details of issuing the policy for the company. Black owed Cross $370, and had transferred to him a Chevrolet car in liquidation of the debt. Subsequent thereto, Black saw what he considered a good bargain in an 8-cylinder Gardner car and, on November 16, 1929, Cross, on Black's suggestion, purchased the car from the Gardner Sales Company for the sum of $1,550, paying $100 cash, and being allowed on the purchase price a further credit of $550 for the used Chevrolet car. Cross signed a note secured by vendor's lien and chattel mortgage for the difference, plus finance charges, or $1,057.72. The total amount that Cross paid for the car, including the finance charges, was $1,707.

It appears that the representative of the Gardner Sales Company called up an officer of the plaintiff company for the purpose of determining if the finance company would be interested in purchasing Cross' note. Investigation into Cross' credit standing and an inspection of the automobile proved satisfactory to the plaintiff's officer, and the note was purchased by the plaintiff from the Gardner Sales Company. Black suggested to Cross that the insurance be placed on the car through John Maher. There was some delay in effecting the insurance, and the officer of the finance company was constantly admonishing Cross that the insurance should be placed on the car. Cross directed Black to have Maher insure the car. Maher called at Black's employer's place of business and, after inspecting the car, issued the policy in question on December 10, 1929. The finance company paid the premium on December 12, 1929. The automobile was stolen from the driveway at Cross' home on the night of December 14, 1929, or the morning of December 15, 1929.

The controversy arose over what Maher states that Black told him at the time that the application was made to secure the insurance. Maher testifies that Black called him on the telephone about insuring the car, and that he took one of the company's application blanks and went over to Black's employer's place of business; that Black stated the car was a new one, purchased during December, 1929, and that Cross paid the sum of $2,195 for it; that he wrote down the information as Black gave it to him; that he and Black went and looked at the automobile in order to obtain the serial and motor numbers; that an inspection of the engine and the car, inside and outside, convinced him that it was a new car; and that, based on Black's representations, he caused the policy to be issued for the sum of $1,500. He admits he fixed the amount of the insurance.

Black denies that he stated the automobile was a new car and that it had been purchased by Cross during December, 1929, for $2,195, but says he told Maher that the car was delivered for that price in December, 1929. He also states that, at the time he and Maher examined the car, the speedometer showed that it had traveled approximately 2,000 miles, and consequently was not a new car.

It further appears from the record that the automobile had been sold by the Gardner Sales Company to one of its salesmen by the name of Sam Bird on September 23, 1929, and thereafter it again became the property of the Gardner Sales Company, which used it as a demonstrator; that the automobile was sold to Cross on November 16, 1929, and had been used by him.

■ The law is clear that defendant had the burden of establishing its special defense. Valesi v. Mutual Life Ins. Co., 151 La. 405, 91 So. 818; Boisblanc v. Louisiana Equitable Ins. Co., 34 La. Ann. 1167; Corpus Juris, Vol. 33, page 107, par. 827.

As we view the record, we have a situation where the defendant seeks to establish by one witness the alleged fraudulent misrepresentations which are denied by the party who is said to have made the statements. It is significant that Maher admits that he inspected the car, but, when asked if he looked at the speedometer and saw that the car had traveled about 2,000 miles, denied that he had observed the speedometer. This, to say the least, is very unlikely. He further states that he did not ask Mr. Black the day of the month that the car was purchased; that it was customary merely to get the month that the car was purchased, and that, if it was purchased in any one month and used in that month, it would be considered a new car, without any inspection. He is uncorroborated in this state-

ment, and it is difficult for us to believe the correctness of his testimony in this respect, because if a party purchased an automobile on the first of the month and abused it by failing to properly lubricate the machine and subjected it to rough driving, by the end of the month the car would have considerably depreciated. Furthermore, the young lady, who was placed on the stand for the purpose of corroborating Maher that Black had 'phoned in the information concerning the motor and serial numbers, on cross-examination stated that she did not remember whether the application, filled in by Maher in his own handwriting, stated that the car was a new one.

Finally, we note that the Gardner Sales Company was next door to the place where Black's employer had its place of business, and any information concerning the history of the car was readily obtainable. Maher admits that, in gathering information concerning the car proposed for insurance, he called on the dealer and also consulted the standard book used by the insurance company as to proper valuation of automobiles for insurance purposes.

■ In view of these circumstances and the fact that the law places the burden of proof upon the defendant, we conclude that defendant has failed to establish that Cross, through Black, was guilty of any fraudulent misrepresentations. Gitz Sash Factory v. Union Insurance Society, 160 La. 381, 107 So. 232; Beene v. Southern Casualty Co., 168 La. 307, 121 So. 876.

■■ But it is said that when Cross obtained the policy it was his duty to have read it and to have discovered the errors, and to have reported them to the insurance company, even if the insurance agent made the errors. The record shows that the policy was delivered on December 11, 1929, to Black, who, in turn, delivered it to Cross, who placed it with the plaintiff finance company. There were only four days intervening between the delivery of the policy and the theft of the car. We do not believe that the failure of Black, Cross, or the finance company to discover the errors in the policy annulled it and caused Cross and the plaintiff to lose their rights under it. It is not even suggested that the officers of the finance company had any reason to suspect that there were any errors in the policy, or that any of its employees or officers were guilty of any misconduct at all. In fact, the record shows clearly that the plaintiff is a bona fide holder of the mortgage note for value, and held the insurance policy in good faith.

We feel that the errors in the application were made by the representative of the insurance company, and that these errors were carried into the policy when he caused it to be written. The failure of the insured to read the policy of insurance, even though it be conceded that he had a proper opportunity

of doing so, does not amount to such laches on his part as will debar him from having the policy reformed. The insured has the right to reply upon the presumption that the policy he receives is in accordance with his application, and his failure to read it will not relieve the insurer of liability.

In Joyce on Insurance, volume 1, page 267, we find the following language: "If the policy does not accord with the application the failure of the insured to read it does not relieve the insurer from the duty of so writing it and where the application is expressly made the basis on which insurance is effected it is of no consequence that the insured does not read the policy when delivered, or promptly object to its tenor."

In Eckert v. Century Ins. Co., 147 Iowa, 507, 124 N. W. 170, the court said: "Failure of insured to examine fire policy, as required therein, and to return it if not in accordance with his statements, will not avoid the policy or forfeit the right of insured to recover thereon."

See, also, German American Ins. Co. v. Darrin, 80 Kan. 578, 103 P. 87; McElroy v. British American Assur. Co. (C. C. A.) 94 F. 990; Gristock v. Royal Ins. Co., 87 Mich. 428, 49 N. W. 634; Taylor v. Glen Falls Ins. Co., 44 Fla. 273, 32 So. 887; Fitchner v. Fidelity Ins. Co., 103 Iowa, 276, 72 N. W. 530; Dryer v. Security Ins. Co. (Iowa) 82 N. W. 494. See, also, Hardin Bag Co., Inc., v. Milwaukee Mechanics' Insurance Co., 160 La. 439, 107 So. 298; Brodie v. Atlas Assurance Co., 158 La. 695, 104 So. 620; State Ins. Co. v. Schreck, 27 Neb. 527, 43 N. W. 340, 6 L. R. A. 524, 20 Am. St. Rep. 696; Parker v. Citizens' Ins. Co., 4 La. App. 711; Willhite v. Hartford Ins. Co., 8 La. App. 538; Frasier v. Hartford Fire Ins. Co., 9 La. App. 622, 121 So. 666; Beene v. Southern Casualty Co., 168 La. 307, 121 So. 876.

■ Plaintiff, in its petition, prays for 25 per cent. damages and a reasonable attorney's fee under section 3 of Act No. 59 Extra Sess. of 1921. We do not believe that plaintiff is entitled to these items, because the assignment by the insured to the finance company, as a holder of the chattel mortgage note on the automobile, is to the extent of its interest of $1,057.72. The loss payable clause reads as follows: "Subject to the Terms, Conditions, Limitations and Agreements of this policy, loss, if any, under Section 1 of the Schedule of Perils is made payable to General Finance Company of Louisiana, Inc., as their interest may appear."

Since the assignment or the loss payable clause does not expressly grant to the plaintiff, as a holder of the chattel mortgage note, the penalty and attorney's fee provided in section 3 of Act No. 59 Extra Sess. of 1921, we cannot assume that it was the intention of the parties to divest the insured as assignor, of those rights.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided and reversed, and that there now be judgment in favor of the plaintiff, General Finance Company of Louisiana, Incorporated, and against the defendant, Universal Automobile Insurance Company, in the full sum of $1,057.72, with legal interest thereon from judicial demand until paid; appellee to pay all costs of court.

Reversed.