**OUACHITA PARISH POLICE JURY v. NORTHERN INS. CO. OF NEW YORK.**

No. 5360.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1937.

Rehearing Denied June 30, 1937.

Writ of Certiorari and Review Denied Nov. 2, 1937.

Deutsch & Kerrigan & Burke, of New Orleans, for appellant.

Frank W. Hawthorne and Theus, Grisham, Davis & Leigh, all of Monroe, and St. Clair Adams & Son, of New Orleans, for appellee.

DREW, Judge.

This is one of five suits filed by the Ouachita Parish Police Jury for the purpose of reforming policies of insurance to conform to the true intent of the parties and, after such reformation, for judgment for certain amounts, together with 12 per cent. statutory penalties and 25 per cent. attorney's fees.

The lower court in a written opinion rendered judgment for plaintiff, ordering the policy reformed and for judgment in the amount sued for, but rejected the demands for penalties and attorney's fees. The opinion of the lower court, in which we find the facts to be correctly found, is as follows:

"This is a suit to reform a fire insurance policy, and to recover thereunder.

"The Police Jury of Ouachita Parish, desiring to distribute their insurance on Parish property equally among the various agents writing insurance in the Parish, took the matter up with the local insurance exchange. This is an insurance exchange whose associates are composed of the various agents selling insurance in Ouachita Parish.

"The insurance exchange appointed a committee, and the Police Jury of Ouachita Parish appointed a committee, and these two committees worked out a fire insurance policy that would be satisfactory to the Police Jury.

"The form approved is known as 'Combined Fire and Tornado Blanket Form (with co-insurance clause and fire coverage)', and said form was approved by the Louisiana Rating and Fire Prevention Bureau, September, 1924, and bore the designation 'Form T–13'. It did not contain a distribution clause.

"The Police Jury entered into contracts of insurance for a three-year period with the various agents, the policies being written on the said Form T–13. When these policies expired,—that is when they were about to expire—the Police Jury took up with the local insurance exchange the question of new policies, and as the policies then in force were satisfactory, the Police Jury, through its committee, notified the committee of the local insurance exchange that the policies were satisfactory as to form, etc., and for the various agents to simply renew their policy. The only change made being the placing of some of the insurance with a new agent, who had started selling insurance since the original policies had been taken out, and he, of course, came in for his pro-rata share of the business.

"The committee of the local insurance exchange in turn notified the various agents in Monroe (all of the agents being members of the exchange), that the Parish of Ouachita wished its insurance policies renewed on the same forms which had been used and which were then in force, this form being known at the time of the issuance of the policies in 1928 as T–13.

"In 1928, Bureau Form T–13 did not contain a distribution clause, but subsequent to that time, the Bureau, in printing Form T–13, included the distribution clause.

"When the various agents received their instructions from the committee of the local insurance exchange, of which they were members, some of them secured Form T–13 from the stenographer in the office of the head of the local exchange. This T–13 Form which they secured was the new T–13 Form and contained a distribution clause, and therefore was not the form which had been used in writing the original policy which the Police Jury requested to have renewed.

"It was the intention of the Police Jury and all of the local agents, and it was the understanding of everyone concerned, until after the loss was suffered by the Parish, that all of the policies were uniform.

"After the loss, it was discovered that some of the policies contained the distribution clause, on account of the error referred to, in using the new Form T–13, while other policies, which were really renewals of the old policy, did not contain this clause.

"In view of this situation, certain companies were forced to bear more than their pro-rata share of the loss which occurred, and they tendered to the Parish of Ouachita in the form of a so-called loan, the amount which they would owe under the policy as written, but secured a promise from the Police Jury to seek legal action to revise the contract, and if recovery were made thereon, to return to the said company the excess amount which they had entrusted to the Police Jury.

"The Police Jury filed this suit seeking to have the contract revised, recover penalties and attorney's fees.

"Instruction from the Police Jury to the Insurance Companies (through the local insurance exchange) was to renew the policy on the same form on which they had been written in 1928, that is, Form T–13, as it existed in 1928.

"The word 'renewal' in insurance, of course, has a definite legal meaning. 'Renewal' means that the original policy shall be repeated in substance and in fact; to express the legal meaning briefly, a 'renewal' would simply mean that the policy in force was to be extended as to the time it was to remain in force. In other words, that the new policy would be identical, except as to the date of its expiration.

"It was clearly understood, the court thinks, that the Police Jury did not intend to change the form of its insurance policy and, while the court is aware that the local insurance exchange represented simply the local agents and not the insurance companies, the court feels that the present situation, as presented in this case, would be the same as one in which the local agent had instructed a clerk in his office to write a policy on Form T–13 as it existed in 1928, and the clerk, through error, had written it on Form T–13, as amended. In other words, the use of the wrong form was a mistake of the agent in this case, based on inaccurate information which he secured from sources other than the Police Jury. It was clearly the intention of the Police Jury and was understood by the various agents that these insurance policies in force were to be renewed and the agent, in writ-

ing the policies, intended to do that, but instead of making a personal investigation to ascertain the exact form used in the contract of insurance then in force, the agents asked a clerk in another insurance office for a copy of the form and were given the wrong form. Clearly, it was a mutual mistake. The Police Jury thought they were getting their insurance renewed; the agents thought they were writing the policies in the same form as the old policies.

"In view of these facts, the court holds that this court, being a court of equity, as well as a court of law, has the right to revise the contract, and it is the judgment of the court that the contract be revised so as to be a renewal in fact of the contract entered into in 1928, that is, without the distribution clause.

■ "In this case, the court finds, after careful examination of the evidence, that there was no demand made prior to suit by the plaintiff, that is, the Parish of Ouachita or its lawful attorney, or anyone authorized by law to act therefor upon the defendant; and therefore, the court holds that the plaintiff is not entitled to the penalty. It is true that a letter was written by St. Clair Adams & Son, attorneys, of New Orleans, making a demand on the defendant, however, there is nothing in the record to show that this firm had any authority to represent the Police Jury in the Parish of Ouachita. Not only does the law provide that the District Attorney shall be the attorney for the Police Jury, but the law goes further and prohibits the Police Jury from employing special counsel to represent them, without first obtaining the consent of the attorney general and the Governor. There is no contention in the record that the law was complied with in the emloyment of St. Clair Adams & Son.

■ "As to attorney's fees, the District Attorney represents and is attorney for the Police Jury, and the law does not allow the District Attorney to collect attorney's fees in cases of this kind from the Police Jury; and in the absence of special counsel having been retained and approved by the Attorney General and the Governor, the Police Jury would be different from ordinary individuals in that they would litigate without the necessity of incurring expense of attorney's fees; for this reason, and for the reason that the court finds from the evidence that no demand was ever made by the Parish or the Police Jury for plaintiff, officially, on the defendant, prior to suit, the court rejects the demand in the petition for attorney's fees.

"Therefore, it is the judgment of this court that there be judgment in favor of plaintiff against the defendant, ordering the contract revised as prayed for, and for the amount prayed for, and rejecting the prayer for attorney's fees and penalties.

"D. I. Gerrett, Judge."

Judgment was signed in accordance with said opinion, and defendant has appealed to this court. Plaintiff has answered the appeal praying that the judgment be amended by allowing penalties and attorney's fees prayed for.

■■ It was clearly the intention of the plaintiff to have the original policies renewed as they were. This intention was conveyed to the committee appointed by the insurance agency, of which all the sixteen insurers' agents were members, and, until after the loss by fire occurred, plaintiff had no knowledge that the policies were different from the ones originally issued. It is true that thirteen of the sixteen agents included in their policies Form T–13, as revised, which carried the distribution clause. It is also true that all but five of the companies voluntarily reformed their policies to make them the same as the original ones issued by them in 1928, which did not carry the distribution clause.

We had occasion to pass upon the question of reformation of policies of fire insurance in the case of Crowell v. New Hampshire Fire Insurance Company, 147 So. 762, 766. In that case we said:

"When the insurance agency issued the contract on June 17, 1930, it was legally bound to issue a policy containing the same terms and conditions as the original policy. By the renewal or extension, unless there is a special agreement for different terms, the original policy is continued under the original stipulations, and the only change is in the time of its expiration. Under such circumstances, if there is a change in the conditions or terms of the policy, it is the duty of the insurer to call attention to the change, otherwise the change can be no part of the contract, and the renewal contract is subject to reformation by the courts of equity to make it conform to the original contract, unless there has been an amendment of the contract by enactment of a statute by the Legislature. See Cyclopedia of Insurance, Couch, Vol. 6, §§ 1363, 1370; Corpus Juris, vol. 32, p. 1144, note

62; R.C.L., vol. 14, § 116, p. 943; Liverpool & London & Globe Ins. Co. v. Hinton, 116 Miss. 754, 77 So. 652.

"Had defendant not been in error as to the owner of lot 208, there would have been no change in the right of tenant occupancy. The failure of plaintiff to read the contracts of insurance does not relieve the insurer. She had the right to presume that the policies were issued in accordance with the original policy, until expressly notified to the contrary. General Finance Co. v. Universal Automobile Ins. Co., 19 La.App. 333, 139 So. 48; Joyce on Insurance, vol. 1, p. 267; Palmer v. Hartford Fire Ins. Co., 54 Conn. 488, 9 A. 248."

We now reaffirm our holding in that case and find that plaintiff had the right to have the contract of insurance reformed as prayed for.

■ The only serious defense urged is that the plaintiff is without right to bring this suit because it has received all the money due it for loss caused by the fire. It is true plaintiff has received all moneys due it, less the amount admitted due by this defendant and the other four defendants in the other suits under the policies issued by them carrying the distribution clause, which is much less than would have been due if the policies had conformed to the original ones issued in 1928, which did not carry the distribution clause. It received the money, however, from the three insurance companies who issued reformed policies identically the same as the original policies, without the distribution clause, and the money was paid by them under the following loan agreement:

"The undersigned Police Jury of the Parish of Ouachita, appearing herein through John M. Breard, its President, duly authorized hereto by a resolution of said Police Jury hereto annexed, hereby acknowledges having received from American Eagle Fire Insurance Company of New York, American Insurance Company of Newark and Jersey Fire Underwriters of American Insurance Company of Newark, the sum of $4333.28, the American Eagle Fire Insurance Company of New York paying $1417.68, the American Insurance Company of Newark, New Jersey, paying $1417.68, and the Jersey Fire Underwriters of American Insurance Company of Newark paying $1497.92, of said amount as a loan, repayable only to the extent of any net recovery the undersigned may make from American Union Insurance Company of New York, Anchor Insurance Company of Providence, R. I., Guaranty Fire Insurance Company of Providence, R. I., National Union Fire Insurance Company of Pittsburgh, Penn., New Brunswick Fire Insurance Company of New Brunswick, N. J., Northern Insurance Company of New York, and the New York Underwriters Insurance Company of New York, on account of the loss by fire on November 13, 1934, to a certain barn belonging to the undersigned; it being understood that net recovery means the amount over and above the amounts shown on the following schedule, which amounts are admittedly due the undersigned and are not included in the amount advanced under this Loan Agreement.

### Schedule

| Pol. No. | Company | Amount |
|---|---|---|
| 8013 | American Union Ins. Co. of N. Y. | $ 2.97 |
| 86952 | Anchor Ins. Co. of Prov. R. I. | 39.42 |
| 2282 | Guaranty Fire Ins. Co. of Prov. R. I. | 22.32 |
| 75159 | National Union Fire Ins. Co. | 39.42 |
| 15215 | National Union Fire Ins. Co. | 39.42 |
| 129 | New Brunswick Fire Ins. Co. | 39.42 |
| 133 | New Brunswick Fire Ins. Co. | 39.42 |
| 15212 | Northern Ins. Co. of N. Y. | 39.42 |
| 76166 | New York Und. Co. of N. Y. | 39.42 |

"As security for such repayment said Police Jury hereby pledge to the said Insurance Companies advancing the above amount, all such claims and any recovery thereon.

"In further consideration of said advance, said Police Jury hereby declares that it is entitled to enforce the reformation of said insurance policies and the collection of the proper amounts from aforesaid Insurance Companies; and said Police Jury does hereby appoint the officers of the American Eagle Fire Insurance Company of New York, American Insurance Company of Newark, New Jersey, and Jersey Fire Underwriters of American Insurance Company of Newark, and their successors, severally, its agents and attorneys in fact, with irrevocable power to collect such claims and to begin, prosecute, compromise or withdraw in its name, but at their expense, any and all legal proceedings which they may deem necessary to enforce such claims, and to execute, in its name, any documents which may be necessary to carry into effect the purposes of this agreement.

"Thus done and signed in triplicate, at Monroe, Louisiana, this 13th day of February, 1935.

"Police Jury of the Parish of Ouachita
"By J. M. Breard, President."

Under this agreement the three insurance companies above referred to instituted this suit in the name of the Police Jury of Ouachita Parish and were joined in the suit by the district attorney of that district.

Defendant contends that the three insurance companies which instituted the suit did not have a cause of action against it and could not by this roundabout process create a cause of action.

This entire proceeding, as we view it, is under the equity provisions of article 21 of the Revised Civil Code, and it would be most inequitable to find that the three insurance companies which instituted the suit in the name of the Police Jury should be required to pay that which is due by defendant, as well as the amount due by them, when all of them had been paid their pro rata part of the premiums with the intention that each company should bear its pro rata part of the loss, if any occurred. We had occasion, however, to pass upon a similar loan agreement in the case of Automatic Sprinkler Corporation of America v. Robinson-Slagle Lumber Company, Inc., 147 So. 542, 543. In that case we said:

"The courts of the United States have universally held that payment under such an agreement is not an unconditional payment, but is a conditional payment or loan, and a payment under such agreement does not deprive the insurance company nor the insured of any right they had prior to the payment. Dejean v. Louisiana W. Ry. Co., 167 La. 111, 118 So. 822; Luckenbach v. McCahan Sugar Ref. Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522, and numerous cases cited in note thereunder on page 1528.

"In the Luckenbach Case, Justice Brandeis gave the following plausible reasons for this ruling:

" ' * * * It is essential to the performance of the insurer's service, that the insured be promptly put in funds, so that his business may be continued without embarrassment. Unless this is provided for, credits which are commonly issued against drafts or notes with bills of lading attached, would not be granted. Whether the transfer of money or other thing shall operate as a payment, is ordinarily a matter which is determined by the intention of the parties to the transaction. Compare the Kimball, 3 Wall. 37, 44, 18 L.Ed. 50. The insurer could not have been obliged to pay until the condition of their liability— i. e., nonliability of the carrier—had been established. The shipper could not have been obliged to surrender to the insurers the conduct of the litigation against the carrier, until the insurers had paid. In consideration of securing them the right to conduct the litigation, the insurers made the advances. It is creditable to the ingenuity of businessmen that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice.' "

We therefore conclude that the contention of defendant that plaintiff is without interest is not well-founded. There is no dispute as to the amount due if we find the suit was properly brought and the contracts of insurance should be reformed. Our finding in both instances is in the affirmative. However, there is a question as to the penalties and attorney's fees. We are convinced from the testimony the lower court in its opinion above quoted has correctly solved these questions.

We find no error in the judgment appealed from, and it is affirmed, with costs.