80 So.2d 897 (1955)
MARYLAND CASUALTY COMPANY, Plaintiff-Appellee,
v.
Elmer E. KRAMEL and Frank W. Kramel, d/b/a Kramel Brothers, Defendants-Appellants.
No. 8284.
Court of Appeal of Louisiana, Second Circuit.
May 18, 1955.
Rehearing Denied June 22, 1955.
*898 Gold & Hall, William E. Skye, Alexandria, for appellants.
Gist, Thornton & Murchison, Alexandria, for appellee.
AYRES, Judge.
This is an action in which plaintiff's insurer seeks recovery from its insured of amounts paid out in settlement of 57 separate property damage claims, each being less than $50, aggregating the sum of $1,534.84. From a judgment in favor of plaintiff as prayed for, defendants prosecute this appeal.
Defendants contend that they should have been protected against the aforesaid claims by a policy of insurance issued by plaintiff, and in their answer pray for a reformation of the insurance contract. Defendants particularly alleged that a clause providing for a $50 deductible per claim basis was inserted in said policy through mutual inadvertence, error and mistake on the part of both plaintiff and defendants.
There is little, if any, dispute about the facts. Defendants are engaged in the paint contracting business under the name of Kramel Brothers. Plaintiff, through its agent, Spengler Insurance Agency, Inc., issued, effective as of June 1, 1949, and expiring 12 months thereafter, a Manufacturers' and Contractors' Schedule Liability Policy. By endorsement of September 13, 1949, the policy was amended to cover property liability damage providing for a maximum liability of $1,000 for each accident and $10,000 in the aggregate, which limits, however, were increased to $10,000 and $25,000, respectively, in an amendment and endorsement of September 17, 1949. These endorsements were issued by Black, *899 Rogers & Company, plaintiff's general agents in the State of Louisiana. A renewal policy, effective June 1, 1950, with an expiration date of June 1, 1951, was duly issued and was in effect on January 16, 1951, the date of the occurrence of the accident which gave rise to these claims. While it is clearly established that the policy in effect at the time of the accident was intended and understood as a renewal of the previously existing policy, there was inserted in the latter policy the $50 deductible clause provision.
In procuring both the original policy and its renewal, it was the intention that it afford full, or 100 percent, coverage. Such was the intention of the defendants and the president of plaintiff's agent, as shown by their positive and unequivocal testimony to that effect, and which is in no way controverted. Neither defendants nor plaintiff's local agent had any notice or knowledge of the deductible provision in said policy until after the occurrence of the accident forming the basis of the claims herein made. The first information that either had of such provision in the policy was from plaintiff's adjuster while proceeding to make an investigation and adjustment of said claims. Immediately upon receipt of this information defendants offered to pay such additional premiums in accordance with a proper rate which could have been fixed on plaintiff's application to the rating commission.
As an affirmative pleading in its original petition, plaintiff alleged that the $50 deductible provision was written into the policy pursuant to a special regulation of the National Bureau of Casualty Underwriters, dated July 8, 1949, and adopted by the Louisiana Rating Commission effective as of July 11, 1949. Accordingly, it was asserted that the endorsements of September 13 and 17, 1949, should have been written subject to the aforesaid deductible provision as theretofore adopted by the rating commission, and that the failure so to do was due to inadvertence on the part of plaintiff.
Similarly, it is contended by the defendants that the insertion of the deductible clause in the renewal policy was an inadvertent mistake which should be corrected by reformation of the contract. Plaintiff, however, insists that it would not have written the policy without the $50 deductible provision, and attempted to show that no such coverage was written by other major insurance companies in the State.
Plaintiff's contentions lose much of their force and fail to carry conviction for two reasons: (1) The policy effective June 1, 1950, was clearly intended by all parties as a renewal of the former policy, and, (2), there is no basis for the conclusion that the coverage desired by defendants could not have been legally written by plaintiff or any other qualified insurer, although the coverage would probably have carried a different and increased rate, which could have been obtained by application to the rating commission.
There is ample authority for the reformation of insurance contracts where, by reason of mutual mistake, the policy as written does not express the actual intent of the parties. 29 Am.Jur., p. 237, "Insurance", § 241, states the general rule as follows:
"Reformation of an insurance policy may be had, in general, where, by reason of fraud, inequitable conduct, or mutual mistake, the policy as written does not express the actual and real agreement of the parties. More particularly, if by inadvertence, accident, or mistake the terms of a contract of insurance are not fully or correctly set forth in the policy, it may be reformed in equity so as to express the actual contract intended by the parties, if the mistake is mutual or if there has been fraud or inequitable conduct by one of the parties to the contract. A suit for a reformation may be and usually is maintained after a loss which would fall within the policy as reformed. If an insurer has agreed to renew a policy but in fact issues a new policy *900 containing different terms, the policy may be reformed to read the same as the original policy." (Emphasis supplied.)
44 C.J.S., Insurance, §§ 278 and 279, pp. 1108-1112, likewise states the general rule pertaining to this subject. For instance, it is therein stated:
"An insurance contract is no different from any other when the rules of law governing the reformation of written agreements are to be applied to it. Like other written instruments, * * * a policy or other written contract of insurance is subject to reformation by a court of equity in a proper case so as to make it conform to the actual agreement of the parties; and, according to the decisions on the question, this is true even after loss or expiration of the policy. * * *
"To justify the reformation of an insurance contract or policy, it must appear that a valid agreement exists and, according to the decisions on the question, that by reason of accident, inadvertence, fraud, or mistake, or, more properly speaking, mutual mistake of the parties or a mistake on the part of one and fraud on the part of the other, or mistake, error, accident, or inadvertence on the part of the draftsman or scrivener in reducing the contract to writing, the policy or other written contract fails to express, or conform to, the real agreement."
The fact that the deductible provision contained in the renewal policy delivered to the defendants was undiscovered by them prior to the loss is of no importance or consequence. Their failure to read the policy does not necessarily bar their right to a reformation, even though they retained the policy without having examined its contents to ascertain whether or not it conformed with the contract agreed upon. It is generally recognized that policies of insurance are rarely examined in detail by the insured, and where they are examined, the insured, due to the technical and complicated language, seldom has a thorough understanding of the contracts. Usually, as in this case, the applicant tells the insurer's agent of his coverage requirements and relies upon the agent for a policy in accordance therewith. In this connection, 29 Am.Jur.; pp. 244-245, "Insurance", § 253, states:
"For these reasons, most courts do not demand the same degree of vigilance and critical examination of fire insurance policies as would be expected of some other instruments. Upon like principle, where an insured applies for a renewal of a fire insurance policy and it is expressly or impliedly understood that the renewal shall be upon the same terms as the earlier policy, it is held that the insured may rely upon receiving such a policy, and is not precluded from asking for a reformation because of a variance, although he did not examine the policy delivered and discover the discrepancy."
This statement of principles concerning fire insurance contracts has equal application to other forms of insurance.
In general, a renewal contract contains the same terms and conditions as the existing policy. It was so held by this court in Ouachita Parish Police Jury v. Northern Ins. Co. of New York, La.App., 176 So. 639, 640, wherein it was stated:
"`The word "renewal" in insurance, of course, has a definite legal meaning. "Renewal" means that the original policy shall be repeated in substance and in fact; to express the legal meaning briefly, a "renewal" would simply mean that the policy in force was to be extended as to the time it was to remain in force. In other words, that the new policy would be identical, except as to the date of its expiration.'"
To the same effect is the rule stated by 44 C.J.S., Insurance, § 285, p. 1133, from which we quote:
"Thus, if insured was not notified of a change in the renewal policy he *901 will not be bound by such change; and it is immaterial that he did not examine the renewal policy until after the event insured against had occurred. In the absence of any agreement for an alteration of the original terms, a renewal contract containing alterations may be reformed."
It was clearly the intention of the defendants to have the former policy renewed in its precise terms. Such was also the expressed intent and understanding of the plaintiff, as evidenced by the agreement and understanding of its local agent, Spengler Insurance Company, Inc.
This court has had the occasion twice to pass upon the question of the reformation of fire insurance policies, first, in the case of Crowell v. New Hampshire Fire Ins. Co., La.App., 147 So. 762, and then in Ouachita Parish Police Jury v. Northern Insurance Co. of New York, supra. It was stated in the former, 147 So. 766, 767, and afterwards quoted in the latter case, 176 So. 641, 642:
"When the insurance agency issued the contract on June 17, 1930, it was legally bound to issue a policy containing the same terms and conditions as the original policy. By the renewal or extension, unless there is a special agreement for different terms, the original policy is continued under the original stipulations, and the only change is in the time of its expiration. Under such circumstances, if there is a change in the conditions or terms of the policy, it is the duty of the insurer to call attention to the change, otherwise the change can be no part of the contract, and the renewal contract is subject to reformation by the courts of equity to make it conform to the original contract, unless there has been an amendment of the contract by enactment of a statute by the Legislature. See Cyclopedia of Insurance, Couch, vol. 6, §§ 1363, 1370; Corpus Juris, vol. 32, p. 1144, note 62; Ruling Case Law, vol. 14, § 116, p. 943; Liverpool & London & Globe Ins. Co. v. Hinton, 116 Miss. 754, 77 So. 652.
"Had defendant not been in error as to the owner of lot 208, there would have been no change in the right of tenant occupancy. The failure of plaintiff to read the contracts of insurance does not relieve the insurer. She had the right to presume that the policies were issued in accordance with the original policy, until expressly notified to the contrary. General Finance Co. [of Louisiana] v. Universal Automobile Ins. Co., 19 La.App. 333, 139 So. 48; Joyce on Insurance, vol. 1, p. 267; Palmer v. Hartford Fire Ins. Co., 54 Conn. 488, 9 A. 248".
We now reaffirm our holding in both of those cases and find that the defendants had the right to have the contract of insurance reformed as prayed for.
Plaintiff's contention that the deductible clause should have been included in the original policy is likewise without merit. Defendants applied for complete property damage coverage and that coverage was provided in the endorsements attached to the policy. It was the intention and purpose of both plaintiff and defendant that such policy by the endorsements referred to provide full coverage for such liability. The provision for such full coverage or the issuance of the policy and the attachment of the endorsements thereto without the deductible feature was neither illegal nor in violation of the regulations of the rating commission. The provisions of the regulations relied upon by plaintiff not only do not prohibit the issuance of such a policy with full coverage of liability but specifically make provision therefor at a rate to be fixed on application to the commission. There was, therefore, no error committed by plaintiff in providing, in the endorsements attached to the original policy, full coverage of liability. As stated hereinabove, such was the intention and agreement of all parties.
The conclusion reached herein on the merits dispenses with the necessity for the *902 consideration of the other defenses urged by defendants, especially those presented under the exception of no cause or right of action.
For the reasons herein assigned, the judgment appealed is annulled, avoided, reversed and set aside, and that, accordingly, plaintiff's demands are rejected and its suit dismissed at its cost, including the cost of this appeal, and it is now ordered, adjudged and decreed there be judgment in favor of the defendants, Elmer E. Kramel and Frank W. Kramel, doing business as Kramel Brothers, and against the plaintiff, Maryland Casualty Company, reforming and correcting the policy herein sued upon, being No. 53-155113, dated June 1, 1950, and expiring June 1, 1951, by eliminating and striking therefrom the $50 deductible clause, which reads as follows: "For spray painting operations, the property damage liability rate for this classification applies for coverage on the $50 deductible per claim basis", and allowing the fixing and determination of a proper and legal rate for said coverage, in accordance with law.
Reversed and rendered.