145 So.2d 376 (1962)
Anderson WELCH, Plaintiff and Appellee,
v.
NEW YORK UNDERWRITERS INSURANCE COMPANY, Defendant and Appellant.
No. 604.
Court of Appeal of Louisiana, Third Circuit.
September 24, 1962.
*377 Bienvenu & Culver, by P. A. Bienvenu, New Orleans, for defendant-appellant.
Charles C. Jaubert, Lake Charles, for plaintiff-appellee.
Before TATE, CULPEPPER and HOOD, JJ.
HOOD, Judge.
Plaintiff, as the named insured, instituted this suit to recover the sum of $7,000.00, being the face value of a fire insurance policy, plus penalties and attorney's fees. The policy was issued by defendant company, and covered a dwelling allegedly owned by plaintiff in Cameron Parish. From a judgment awarding plaintiff the full amount of *378 the policy, plus 25 percent penalties and $1,000.00 attorney's fees, defendant insurer has appealed to this court.
The insurer resists the demands of the plaintiff on the ground that the policy was void from its inception because of plaintiff's willful misrepresentation or concealment of material facts both before and after the issuance of the policy; that plaintiff lacked the necessary insurable interest in the insured property; that the assessment of penalties and attorney's fees against the insurer was erroneous; and finally, that the penalty, if allowed, should be reduced to twelve percent.
The evidence establishes that in 1946 the plaintiff purchased a small, three-room house from his wife's father, G. W. Dow, for the sum of $400.00. The house was situated on land which belonged to the community previously existing between Mr. Dow and his deceased wife. About four years after this purchase was made, plaintiff began making improvements on the house by adding two rooms to the original structure. Later, a complete bathroom was added, and a metal roof and asbestos shingles were installed. The cost of all of these improvements were borne by plaintiff. The trial judge found that at the time of the fire the house was 24 feet wide and 36 feet long, containing about 864 square feet of floor space.
The plaintiff and his family lived in the house until 1957, at which time they moved due to plaintiff's employment elsewhere. The house remained vacant for about one year immediately following this move, and then it was occupied by several different families up to the latter part of the year 1959. These families apparently had been allowed to live in the house with the understanding that they would keep it in a proper state of repair in lieu of paying rent, plaintiff having received only one month's rent during the period which elapsed between the time he moved away from the premises and the time the fire occurred. There have been no adverse claims of ownership of the house.
During that same period, plaintiff made several unsuccessful attempts to sell the house, apart from the land, assigning as reasons for wanting to sell it that he no longer lived in that vicinity and couldn't take care of it. When it became apparent that his efforts to sell the house were not going to be successful, plaintiff decided to continue his renovation program so that he could rent the property, and he also decided to insure the house against loss by fire "to have some security to take care of the place in case something happens." Pursuant to this decision, plaintiff's wife purchased a policy of fire insurance from defendant's agent on October 19, 1959. At that time the house was vacant, and was being repaired by plaintiff's brother-in-law, Wilson Smith. On December 24, 1959, Mr. Smith noticed that a small hole, approximately twelve inches in diameter, had been burned in the ceiling, and that there were bits of burned paper and charred wood shavings in the attic around this hole. He immediately notified the plaintiff of this occurrence by mail. Although defendant contends otherwise, the trial court concluded, correctly we think, that this fire was of purely accidental origin. About two weeks later, on January 11, 1960, the insured property was totally destroyed by fire. Two days later, Mrs. Welch reported the fire to defendant's agent, requested payment under the policy, and later supplied the required proofs of loss. Defendant refused to make the payment, however, and this suit was then filed.
Defendant contends primarily that the fire insurance policy on which this claim is based was void from its inception, because plaintiff willfully concealed and misrepresented material facts concerning the condition and value of the building in obtaining the policy. It alleges that at the time the policy was issued the building was in a dilapidated condition, that plaintiff's earlier attempt to sell the house for $1,200.00 was a material fact relating directly to the value *379 of the house, that the house had been unoccupied for long periods of time prior to obtaining the insurance, and that plaintiff, through his wife, fraudulently concealed or misrepresented these facts at the time the policy was issued.
Consistent with the provisions of LSA-R.S. 22:691, relating to standard fire insurance policies, the policy involved here provides that, "This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." In order for the insurer to void a policy under this provision it is necessary that it establish that there was actually a concealment or misrepresentation of fact, that the concealment or misrepresentation was willful, and that it related to a material fact or circumstance concerning the insurance or the subject thereof. We think the general rule is correctly stated in 46 C.J.S. Insurance § 1316(4), as follows:
"As a general rule, if defendant relies on false or fraudulent statements or representations on the part of insured in procuring the insurance, in order to avoid the policy or liability thereon, it has the burden of proving such facts. Where such elements are regarded as essentials, defendant also has the burden of proving that the misrepresentations were made by insured with knowledge of their falsity, and with a fraudulent intent to mislead or deceive, and that they were material to the risk, and were relied on by defendant and acted as an inducement to it to issue the policy; * * *."
In our opinion the general rule hereinabove stated applies in this state. See LSA-R.S. 22:692 (dealing specifically with misstatements in fire insurance applications); Knowles v. Dixie Fire Ins. Co. of Greensboro, N. C., 177 La. 941, 149 So. 528, 529 (fire insurance); Gay v. United Benefit Life Insurance Company, 233 La. 226, 96 So.2d 497 (health and accident insurance); General Finance Company of Louisiana v. Universal Automobile Ins. Co., 19 La.App. 333, 139 So. 48 (automobile insurance); Parker v. Hartford Fire Ins. Co., La.App. Orl., 163 So. 435 (fire insurance); Rickerfor v. Westchester Fire Ins. Co. of New York, La.App., Orl., 186 So. 109, reinstated on rehearing, La.App., 187 So. 676 (fire insurance); American Indemnity Co. v. Newson, La.App. 2 Cir., 79 So.2d 392 (fire insurance); Kennison v. U. S. Letter Carriers' Mutual Benefit Ass'n., La.App. 1 Cir., 132 So.2d 94 (health and accident insurance); Niagara Fire Insurance Company v. Everett, 292 F.2d 100 (5 Cir., 1961) (fire insurance); 4 Appleman on Insurance, 465-470; 29 Am.Jur. (Insurance), Secs. 694, 700, 702; 29A Am.Jur., Sec. 868.
If the insurer in the instant case is to succeed in avoiding liability, therefore, it must carry the burden of proving that there was a willful concealment or misstatement of fact, and that the facts allegedly misstated or concealed were material. The trial court concluded that the insurer has failed to show any such knowing and willful concealment or misrepresentation of material facts relating to the condition and value of the house sufficient to avoid the policy. The defendant, in arguing that the trial court erred in arriving at that conclusion, contends that the house was "constructed of inferior material, was old, dilapidated, rotten, rundown, and not fit for habitation." We agree with the trial judge that defendant's argument in this respect is not supported by the evidence, although there is some conflict in the testimony as to the physical condition and value of the building. The plaintiff testified as to the repairs which had been made, and said that the house "was in perfect condition." Mrs. Welch termed the condition of the house "pretty good," and the testimony of three other witnesses, Wilson Smith, Mr. Dow and Clarence Turner, is in accord with this claim. On the other hand, three witnesses. *380 Morris Simons, C. J. Stromer and Elias Thibodeaux, said that the house was in poor condition. After considering all of the evidence we, like the trial judge, are convinced that the house was in fair condition at the time of the fire, and that plaintiff's wife did not knowlingly or willfully misrepresent or conceal any material fact relating to the condition of the house.
The claim that plaintiff's wife deliberately overvalued the property in the application for insurance, in our opinion, also is without merit. The testimony of both Mrs. Welch and the insurer's agent indicates to us, as it did the trial judge, that the agent established the value without any definite statement from Mrs. Welch as to a monetary amount at which the value should be set. In that connection, the following is a portion of the testimony of defendant's agent:
"Q. Did she mention any figure to you when she started the conversation?
"A. I don't honestly recall if she mentioned a figure. * * * Generally we use a rule of thumb square footage and you ask a person, is it poor, average or superior construction when you put a square footage measure on it, and, as I recall, on this one my square footage measure came upit could be, in some instances, you could put as much as $10,000.00 on the house on a square footage. Some dwellings with that many square feet could be valued at that, and then I applied a depreciation factor, roughly and an obsolescence factor and the figure of seven was arrived at."
Even if the statements made by Mrs. Welch to the agent should be interpreted as an overvaluation of the house, we think such overvaluation was made through error of judgment or inadvertence, and it was not sufficient to void the policy. In that connection, the Supreme Court, in the case of Garnier v. Aetna Insurance Company of Hartford, Conn., 181 La. 426, 159 So. 705, held that, "Where an assured overestimates the value of his property through mistake or inadvertence, the overvaluation does not amount to fraud sufficient to void the policy." Also, the U. S. District Court for the Western District of Louisiana, in Hinson v. British America Assurance Company, 43 F.Supp. 951, quoted with approval the following statement found in American Jurisprudence:
"`* * * In some of the cases it has been said that an overvaluation made by the insured through error of judgment or inadvertence is, in effect, merely an expression of opinion which affords no ground for an avoidance of the policy, and will not cause a forfeiture thereof.'" (29 Am.Jur., Insurance, Sec. 1132)
The fact that plaintiff attempted to sell the house for a seemingly low price should be considered in connection with his testimony, we think, but that fact alone is not conclusive as to the value of the house, nor is it the best evidence as to value. The evidence shows that at one time plaintiff tried to sell the house, apart from the land, for $1,200.00. This figure cannot be accepted as an indication of the value of the house for insurance purposes, however, because the house was offered for sale with the understanding that the purchaser would move it off of the property. More reliable evidence as to the value of the house, we think, are the estimates made by two building contractors of the replacement cost of the structure. One such estimate was $4,897.23 and the other was $7,548.93. Although these estimates are divergent, they clearly show that the house had a value greatly in excess of the amount for which plaintiff had offered it for sale.
Defendant interprets the evidence as establishing that the house had been unoccupied for a long period of time just prior to the issuance of the insurance policy. As we understand the facts, the building had been unoccupied for only a few weeks before the policy was obtained. It is true *381 that the house was vacant for a period of about one year immediately after plaintiff moved away from it in 1957. Subsequent to that period of vacancy, however, the house was occupied intermittently until about one month before the policy was issued. From out reading of the testimony relating to the application for insurance, we cannot say that Mrs. Welch deliberately led the agent to believe that the house was occupied at the time such application was made.
Defendant-insurer also questions plaintiff's ownership of, and his insurable interest in, this property. The record shows that at the time the policy was issued plaintiff and his wife owned a relatively small undivided interest in the land upon which the house was located. As has already been pointed out, however, plaintiff had purchased the house from his wife's father and had remodeled it at his own expense. He had occupied it, had used it exclusively for his own benefit and apparently at all times had been recognized as the sole owner of it. We believe that these circumstances are sufficient to warrant a holding that he had an economic interest in the preservation of the house, free from loss, sufficient to vest in him an insurable interest in it, within the meaning of Section 614 of the Louisiana Insurance Code (LSA-R.S. 22:614), which reads as follows:
"`Insurable interest' as used in this Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage."
Substantially the same question was presented in Knighten v. North British Mercantile and Insurance Company, 238 La. 767, 116 So.2d 516, and in that case the Supreme Court held that the plaintiff had an insurable interest in the affected property. See also The Forge, Inc. v. Peerless Casualty Company, La.App. 2 Cir., 131 So. 2d 838.
In this case the insured house was an immovable by nature. See LSA-Civil Code Article 464, and Lighting Fixture Supply Company v. Pacific Fire Insurance Company, 176 La. 499, 146 So. 35. In the cited case the Supreme Court said:
"* * * `The law makes no distinction between buildings erected by the owner and those erected by tenants or others. If they are erected on the land, they are immovable by their nature.'"
Since the insured property in this case was immovable by nature, the Louisiana Valued Policy Law (LSA-R.S. 22:695) applies. Under that law, the insurer may not go behind the policy and show that the insured's interest is worth less than the amount of the policy. The Forge, Inc. v. Peerless Casualty Company, supra. In view of the provisions of LSA-R.S. 22:695, the fact that plaintiff's house was totally destroyed by fire, and our finding that plaintiff had an insurable interest in the insured property, we conclude that plaintiff is entitled to recover the total amount for which the property was insured.
Defendant argues further that the policy is void because of plaintiff's failure to notify it of the attempt which had been made to burn the house after the policy had been issued and before the property was actually destroyed by fire. We agree with defendant that an attempt to burn the insured premises is a factor which would materially increase the hazard. In this case, however, we have concluded that the fire damage which occurred in December, 1959, was of accidental origin. In our opinion the risk or hazard was not increased by this occurrence, and accordingly plaintiff was not under a duty to inform the insurer of it.
We think the insurer's failure to pay the policy benefits within sixty days after demand was "arbitrary, capricious, or without probable cause," within the *382 meaning of LSA-R.S. 22:658, and, accordingly, that the insured is entitled to an award of penalties under that section of the Revised Statutes. The insurer contends, however, that the trial judge erred in his award of 25% penalties, and that the penalties, if any, should be 12%. Under this statute, arbitrary failure of the insurer to make timely payment of any insurance claim, except death claims and those arising under health and accident contracts, "shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, * * * together with all reasonable attorney's fees for the prosecution and collection of such loss * * *." This section of the Revised Statutes, however, also contains the further proviso that:
"Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees."
A review of the origins of this section reveals that Act 168 of 1908 provided for a 12% penalty in cases in which payment was not made within 60 days. Later, by Act 59 of 1921 (Extra Session), the Legislature established a 25% penalty applicable to policies issued by companies "engaged in the business of insuring automobiles, trucks, motor propelled vehicles and other properties against fire and theft * * *." In 1927, the Louisiana Supreme Court, in the case of Stovall v. Sterling Fire Ins. Co., 163 La. 284, 111 So. 707, held that the 1921 act providing for a 25% penalty applied only to companies engaged in insuring "motor propelled vehicles and the like," and that a maximum penalty of only 12% could be assessed for the arbitrary failure to pay a fire loss affecting immovable property. In so holding, the Court said:
"Plaintiff claims 25 per cent. damages under Act No. 59, Extra Session of 1921, p. 76. But that law applies only to companies engaged in the business of insuring motor propelled vehicles and the like against fire and theft. The act which applied here is Act No. 168 of 1908, p. 226, under which plaintiff is entitled as damages to 12 per cent on the amount recovered * * *."
The Stovall case was later cited with approval by the Supreme Court, and a 12% penalty was assessed without comment, in Davis v. National Fire Insurance Company, 169 La. 63, 124 So. 147.
In 1948, the Louisiana Insurance Code was enacted (as Act 195), and Section 14.48 of that Code contained a proviso, identical with that contained in Act 59 of 1921, that a 25% penalty may be assessed in fire and theft policies covering "automobiles, trucks, motor propelled vehicles and other property." It seems clear to us that the Legislature, in enacting this section of the Insurance Code, merely intended to codify the existing law with reference to these penalties, and that the ruling in the Stovall case was intended to apply with equal force to the provisions of the Insurance Code. Section 14.48 of the Insurance Code was later incorporated, verbatim into the Louisiana Revised Statutes, as R.S. 22:658. With this background, it seems to us that the holding of the Supreme Court in the Stovall and Davis cases, both of which were based on the 1921 statute, must also apply to R.S. 22:658, which obviously is merely a codification of the prior law on that subject.
Plaintiff, however, in urging that the trial court was correct in assessing a 25% penalty, cites Creel v. Audubon Insurance Company, La.App. 1 Cir., 128 So.2d 284 (Cert. denied), in which case a 25% penalty was allowed by the trial court in connection with a fire loss affecting immovable property, and the judgment was affirmed. A review of the opinion rendered in that case, however, indicates to us that the only issues which were raised with reference to the claim for penalties were whether the *383 failure to pay was arbitrary, capricious or without probable cause and, if so, whether the amount awarded as attorney's fees was excessive. No issue was raised, so far as we are able to determine from the reported decision, as to whether the penalty should be 12% or 25%, and for that reason we do not interpret the Creel case as overthrowing the rule announced in Stovall v. Sterling Fire Insurance Co., supra.
In our opinion, the trial court erred in allowing plaintiff a 25% penalty in this case, and the judgment should be amended to reduce the penalty to 12%. The amount awarded as attorney's fees appears to us to be fair and adequate.
For the reasons herein assigned, the judgment appealed from is amended by reducing the penalties allowed from 25% to 12%; and in all other respects the judgment is affirmed. All costs of this appeal are assessed to defendant-appellant.
Amended and affirmed.