EASTERN DIST. case, within the law cited from Livermore's Treatise on
June, 1838. Agency, vol. 2. page 213, 14, 15 and 17, where it is said,

REGNIER "that if the act of the supercargo and master, be properly
*vs.* referable to his character as master, and respect his duty
LA. STATE
MARINE AND under the owners of the vessel, it is an act for which they
FIRE INS. CO. are responsible." And the law cited by the claimant's
Where the counsel, from the Louisiana Code, extends this responsibility
master and own-
er of a vessel still further, and gives the shipper a privilege upon the
lands goods at proceeds of the sale of the vessel itself.
an intermediate
port, and ships We think, therefore, that the decree of the Parish Court,
them to the place is erroneous, and that the claim of De Bolli, should be pre-
of destination on
board another ferred to that of the plaintiffs.
vessel, without
the consent of
the shipper, and
they are lost, he It is, therefore, ordered, adjudged and decreed, that the
is liable for the judgment of the Parish Court, so far as it respects the claim
loss.
of De Bolli, be avoided and reversed ; that he be paid the
sum of six hundred and thirty dollars, out of the proceeds of
the sale of the schooner Pennsylvania, in preference to the
claim of the plaintiff; that the judgment be affirmed in all
other respects ; and it is further ordered that the plaintiff
and appellee pay the costs of this appeal.

---

REGNIER *vs.* LOUISIANA STATE MARINE AND FIRE INSURANCE
COMPANY.

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF
NEW-ORLEANS.

Where the claim for indemnity against loss by fire, is resisted by a charge
of an attempt by the claimant to defraud the underwriters, in setting fire
to his own store, and claiming losses on goods which never happened,
such fraudulent intent must be shown ; but it may be shown by presump-
tions as well as by direct evidence, and when once established, no reco-
very can be had.

So, where the statement of losses sworn to by the claimant, is disproved by witnesses, he is precluded on that ground from recovering against the underwriters.

Presumptions and circumstantial evidence in a case, may be insufficient to convict in a criminal prosecution for arson, and yet sufficiently strong to prevent a recovery on a policy of insurance, when the claimant is charged with attempting to defraud the underwriters.

EASTERN DIST.
June, 1838.

REGNIER
vs.
LA. STATE
MARINE AND
FIRE INS. CO,

This is an action on a policy of insurance. The pleadings and facts of this case are so fully stated in the opinion and judgment pronounced by the parish judge, that his statement is given as a full report of the case.

"The plaintiff claims from the defendants, a sum of two thousand three hundred and seventy-nine dollars, which he alleges to be the value of goods, merchandize, counters, glass cases and shop fixtures, destroyed by fire, and which formed a part of certain property insured against fire by the defendants. 2d. A sum of one hundred dollars, occasioned by the refusal of the defendants to settle for the loss.

"The defendants by their answer, deny the goods injured or destroyed by the fire, were of the value or amount, as stated by the plaintiff, and they aver that the fire was occasioned by the fraud or gross negligence of the plaintiff.

"I will first examine the second ground of defence set up by the defendants, for if supported, there is at once an end to the controversy, and the plaintiff cannot recover.

"Was the fire occasioned by the fraud or gross negligence of the plaintiff?

"The legal principle, that fraud is not to be presumed, is applicable to cases of this kind. It is, therefore, incumbent on the insurer, who charges fraud against the insured, to prove the charge, (*Boudousquie, Traité de l'Assurance contre l'incendie*, page 351, No. 363,) and in a claim against an insurer for loss by fire, where the defence was, that the insured had himself set fire to the premises insured, it was decided, that the facts were to be as fully and completely proved, as on an indictment for arson. *Philips on Insurance, vol. II. p. 503.* In order to decide on this means of defence, it is proper that I should place myself in the situation in

EASTERN DIST.
June, 1838.

REGNIER
vs.
LA. STATE
MARINE AND
FIRE INS. CO.

which I would be, were I sworn as a juror, to try the plain-
tiff on a charge of arson ; if from the evidence I could bring
against him a verdict of *guilty*, the plea of the defendants is
made out. If, on the contrary, I was in conscience bound to
bring in a verdict of *not guilty*, the defendants must fail in
their plea.

"A careful examination of the evidence, leaves no doubt in
my mind, that on the evening of the 22d of February, 1836,
the store of the plaintiff, insured by the defendants, was in-
tentionally set on fire : a heap of rags collected together,
several remnants of matches, and many other circumstan-
ces, establish the fact most conclusively. But was it set
on fire by the plaintiff? The evidence in the case con-
vinces me of the utter impossibility that it should be so.
The fire broke out, or rather the smoke, which indicated
the existence of the fire, was perceived for the first time
by the inhabitants of the lodgings, above the plaintiff's
store, between the hours of nine and ten o'clock in the even-
ing. It is in proof, that the plaintiff left his store at five
o'clock the same evening, and remained in company with a
witness, (Jean Barrère,) with whom he went to St. Charles
Theatre, until between eleven and twelve o'clock, without
the witness losing sight of him for an instant, and that it
was on their return from the theatre, that they found the
plaintiff's store occupied by a man of the city guard, who
had been placed there after the fire had been extinguished.

"Now, if the rags had been collected, the matches lighted,
in short, the fire, four hours or four hours and a half would
have elapsed before any smoke issued from the store, which,
from the nature of the combustibles found in the spot, and
especially, the brimstone matches, I consider as impos-
sible.

"I must infer, or suppose, that the fire was set after the
plaintiff had left his store to join Barrère, and go to the the-
atre with him ; I incline the more to this supposition, as it
assists me in explaining other circumstances of the case,
which I will notice hereafter, and which otherwise, I should
not know how to account for. Was the plaintiff indicted as

principal for arson, as having set fire to the store in ques- EASTERN DIST.
tion, and was I sworn on the jury to try him, I should cer- June, 1838.
tainly not find him guilty; for the same reason, in the REGNIER
present case, I cannot say that he set fire to his store. There vs.
is nothing in the evidence, that can induce a belief that it LA. STATE MARINE AND
was set by another at his command or request, or with his FIRE INS. CO.
participation. I must, therefore, consider the defence on the
score of fraud or gross negligence, as not made out.

"Having disposed of this first point, I will next inquire
into the other.

"Were the goods injured or destroyed by the fire, of the
value or amount stated by the plaintiff?

"The testimony of several unimpeached witnesses, esta-
blishes clearly, in my opinion, that previous to the fire, to
wit: on the very day, and even a few minutes before five
o'clock, P. M., when the plaintiff left his store to go to the
theatre, there was in said store an amount of goods or articles,
if not greater, at least equal to the amount claimed from the
defendants, as having been lost or injured by fire. But it is
equally evident from the testimony of witnesses, whose vera-
city cannot be doubted, that at the time the fire was per-
ceived, and the store was entered, the quantity of goods or
articles found there, was of an amount far below the one
claimed by the plaintiff; a contradiction, so manifest, I can
account for only in one way, and this conclusion, I have
arrived at, after a very careful examination of all the circum-
stances of the case.

"The real state of things must be as follows: when the
plaintiff left his store, at five o'clock in the afternoon, he left
in it the goods and articles; subsequently, in the course of the
evening, some evil designed person or persons, most probably
entered the store, either by means of false keys, or in some
other manner hitherto unexplained, carried away a great part
of the goods, and with a view to conceal the theft, prepared
the combustible matter, laid the matches, set fire to them,
and went away, and the fire broke out afterwards. I can
in no other manner reconcile the opposite and contradic-
tory circumstances presented in this case.

EASTERN DIST.
June, 1838.

REGNIER
vs.
LA. STATE
MARINE AND
FIRE INS. CO.

" I have deemed it my duty to be ·thus particular in stating my ideas on this subject, from the consideration, that if on one side the interest of the defendants are at stake, on the other, the character of the plaintiff might be un-justly blasted, and I rejoice at finding what I consider a satisfactory explanation, which afforded relief to both.

" After having taken this view of the case, it remains for me to settle, what I consider the plaintiff actually entitled to claim from the defendants.

" The insurance was against the fire. The defendants are, therefore, only liable for the losses and injury occasioned by the fire ; what may have been stolen before the fire, they are not responsible for, and from what I have before sta-ted, I am clearly of opinion, that the plaintiff cannot recover from 'the defendants the amount of all the goods which were in his store when he left it, but only the amount of such goods, and articles as remained in the store at the time of the fire, and which were injured or destroyed by it.

" The witnesses, who have given their opinion as to the value of the articles, found in the store at the time they entered it to extinguish the' fire, vary in their appraise-ment, and the one whose valuation appears to be the high-est, (John Slidell, Esq.,) says, that he is certain, it was nothing like five hundred dollars. On the other hand, among the articles found, were the counters, glass cases, fixtures, etc. of the shop, which, in the policy of insurance, form a special item of two hundred and seventy dollars, and the remnants of which, after the fire, were valued at fifteen dollars ; thus showing, in this item alone, a loss of two hun-dred and fifty-five dollars, to which sum is to be added, the diminution in the value of the goods *still existing*, and inven-toried after the fire, taking as a standard the prices charged in the bills on file, (furnished by the merchants from whom the goods were purchased,) amounting at least to three hun-dred and forty-five dollars ; so that, this court is fully war-ranted in assessing the damages suffered by the plaintiff, in consequence of the fire, to a sum of six hundred dollars."

Judgment was given for the plaintiff, from which the defendants appealed.

EASTERN DIST.
June, 1838.

REGNIER
vs.
LA. STATE
MARINE AND
FIRE INS. CO.

*Marsoudet*, for the plaintiff.

*Conrad*, for the underwriters and appellants.

*Bullard, J.*, delivered the opinion of the court.

The defendants resist the claim on the part of the plaintiff, to be indemnified for a loss sustained by fire, on the allegation, that the trifling loss really sustained, was fraudulent, and occasioned by the fraud or gross negligence of the assured.

The insurance was upon cloths, ready made clothing, and a tailor's stock in trade, etc., to the amount of about four thousand four hundred dollars, and the plaintiff sues for two thousand three hundred and seventy-nine dollars and thirty-four and a half cents, the amount of the loss alleged to have been sustained by him.

It is admitted on all hands, that the store in which the plaintiff usually kept his stock, situated in Royal-street, was intentionally set on fire by somebody. It appears that the fire had been kindled in the inside, under the counter, by means of certain combustible materials, such as charcoal and brimstone matches. A smoke being discovered about ten or eleven in the evening, Mr. Boyer who had the key of a back door, succeeded in penetrating the store, while a crowd alarmed by a cry of fire, forced open the front door, and the fire was soon extinguished. The loss was trifling, and those who first entered, agree in stating, that the store was almost literally empty. The plaintiff who kept the key of the front door, was at the American Theatre in St. Charles-street, in company with his friend and former partner, for the first time, although neither of them understood English. It is true, it is not shown what the play was, but the proof of an *alibi* at the time the fire was discovered and for some time before, is undisputed. As soon as the play was over they proceeded to the front door of the store, in order to enter, and

EASTERN DIST.
June, 1838.

REGNIER
vs.
LA. STATE
MARINE AND
FIRE INS. CO.

we must suppose that the lessee had about him the key. They found the door guarded by a city watchman, who refused them admission.

The parish judge in giving judgment against the defendants, for the amount of articles thus destroyed or damaged, assumed as the basis of his reasoning, the principle settled in a case quoted by Phillips in his treatise on insurance, (vol. 2, p. 503,) that in a claim against an insurer for loss by fire, when the defence was, that the assured had himself set fire to the premises insured, the facts are to be as fully and completely proved as on an indictment for arson ; and the judge concludes, that as the évidence adduced in this case, would not satisfy him if he were sitting as a juror, that the plaintiff was guilty, he is entitled to recover the amount of the loss really sustained.

We are not disposed to question the correctness of the general principle settled in that case. But in that case the property insured, was destroyed by a peril insured against, and the allegation was, that the assured himself had set fire

<div style="font-style: italic;">Where the claim for indemnity against loss by fire, is resisted by a charge of an attempt by the claimant to defraud the underwriters, in setting fire to his own store, and claiming losses on goods which never happened, such fraudulent intent must be shown; but it may be shown by presumptions as well as by direct evidence, and when once established no recovery can be had.</div>

to the premises, and was not, therefore, entitled to indemnity for a loss really sustained. In this case, now before us, the plaintiff is charged with fraud or gross negligence, and the loss to the extent alleged by him, is denied. A very large part of the property covered by the policy, had evidently been removed clandestinely from the premises. When the owner has really lost the whole property for which he seeks indemnity, the presumption that he intentionally destroyed it, is much weaker than in a case where only a very insignificant amount is destroyed, and the assured persists in suing for a total loss ; and is repelled by a charge, not of arson but of an attempt to defraud the underwriters, or of gross negligence ; which fraudulent intent must be shown, but it may be shown by presumptions as well as by direct evidence, and when once established, nothing can be recovered. *Ex turpé causâ non oritur actio.* To sanction a different doctrine, would, in our opinion, be to encourage incendiaries by securing to them in any event, the costs of their abortive experiments at the expense of underwriters.

EASTERN DIST.
June, 1838.

REGNIER
vs.
LA. STATE
MARINE AND
FIRE INS. CO.

But what are the facts of the case which tend to prove that the plaintiff intended to defraud the underwriters, and that the fire was set by him, or at least with his knowledge and connivance?

In the first place it is clearly shown, that the stock of goods had been removed, and nothing shows that they could have been taken away without the knowledge of the plaintiff. If they had been stolen, it is probable some traces of violence would have been discovered. And what motives could thieves have had to set fire to a small remnant of the goods? Why not take all? It is difficult to believe that a store in Royal-street, could be rifled at such a time and in such a manner, and then carefully shut up. In the next place we have the combustibles arranged under the counter in such a way as to show that the incendiary was acquainted with the interior of the house, and had taken his time to prepare the whole plot. What other human being can be suspected to have had the slightest motive either of interest or revenge, to prompt him to so atrocious an attempt. If the design had been to injure the plaintiff, why not destroy the whole stock while it was yet in the shop? Why select only a few miserable remnants? The plaintiff alone could have had any interest in the success of such an attempt, and his interest was direct; it secured his recourse upon the defendants for the whole property insured. The force of the legal maxim *cui prodest ille fecit*, is established by the experience of all ages.

But the absence of the plaintiff that evening, and the proof of an *alibi*, might tend, under ordinary circumstances, to weaken these presumptions. He was at the St. Charles Theatre for the first time in his life. If he had a fondness for scenic representations, he would naturally have visited the Orleans Theatre. There he would have found at least a language which he understood, and those dramatic writers more congenial to his national taste. Or if he had been struck by a sudden curiosity to witness the performance of an English play, he would probably have taken with him some companion who understood the language, and who

EASTERN DIST.
June, 1838.

REGNIER
vs.
LA. STATE
MARINE AND
FIRE INS. CO.

could have made him acquainted at least with the plot and the principal incidents. At the Orleans Theatre, he would have been much nearer his own residence, in the event of an alarm of fire. The visit to the theatre that evening, was, apparently, a serious affair ; the arrangement to go was made at one o'clock, P.M. and they left the shop at about five, and the chosen companion was the plaintiff's late partner. If, on the other hand, it should be said, that they were attracted by a desire to inspect the new Theatre, to examine its arrangements and its adaptation to scenic representation, or the taste displayed in the costume of the players, it may be asked why the visit was postponed for three months after the edifice was opened to the public, and what necessity was there to set out five long acts and a farce, and to remain until nearly midnight.

So, where the statement of losses sworn to by the claimant, is disproved by witnesses, he is precluded on that ground from recovering against the underwriters.

Presumptions and circumstantial evidence in a case, may be insufficient to convict in a criminal prosecution for arson, and yet sufficiently strong to prevent a recovery on a policy of insurance, when the claimant is charged with attempting to defraud the underwriters.

Although these presumptions might perhaps appear insufficient in a criminal prosecution, if the plaintiff were on his trial for arson, yet the case presents itself under the policy in a very different light. The 8th article, which points out the preliminary proofs, which are required before any loss will be paid, contains the following additional condition, " also, if there appears any fraud or false swearing, the claimant shall forfeit his claim to restitution or payment by virtue of this policy." There is a statement in the record of goods in the store at the time of the fire, sworn to by the plaintiff, showing a loss of goods to the amount of two thousand two hundred and sixty-six dollars and fifty cents. The witnesses who were the first to enter the store, when the fire was discovered, concur in disproving this statement, and on that ground alone the plaintiff would be precluded from recovering. It is fortunate for the honest part of the community that guilt is often detected by its own clumsy contrivances to conceal itself, and that suspicions sometimes ripen into conviction by the very efforts made to stifle them.

This court is bound to pronounce clearly the grounds of its opinions, and the result of its convictions, &c. In this case, the plaintiff has not, in our opinion, shown himself entitled to recover any thing.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be annulled and reversed, and that ours be for the defendants, with costs in both courts.