LAND, J.
This is a suit on two policies of fire insurance for $2,500 each, issued by the defendant on plaintiff’s stock of merchandise in a certain storehouse on Magazine street in the city of New Orleans. There was other insurance on the same stock. Plaintiff sued for $4,120.29 as representing defendant’s proportion of liability for the loss.
The petition represents that the plaintiff’s stock of merchandise was directly damaged and destroyed by fire to the full amount and value of $30,969.19, after deducting all salvage, and that the amount of insurance then held by the plaintiff on said property aggregated $37,250.
The petition represents that the defendant refused, and still refuses, to pay its proportion of the aforesaid loss or any part thereof, and has denied, and continues to deny, liability in the premises upon the utterly false pretense that petitioner has exaggerated its loss by making fraudulent entries in its inventories, books, and records, and submitting fraudulent proofs from its books.
The gist of defendant’s answer is that the two policies were forfeited through fraud and false swearing — fraud in the padding of the inventory, and false swearing on the part of the officer’s of the company in the attempt to perpetrate the fraud.
Besides this issue of fraud, there is the secondary question as to what was the actual amount of the loss by fire, which, however, is immaterial, if the policies have been forfeited.
After a protracted trial before a jury, there was a judgment for the plaintiff in the sum of $2,115, based on a verdict as follows, to wit:
“We, the jury, * * * find for plaintiff in the sum of fifteen thousand seven hundred and fifty-seven dollars and twelve cents ($15,757.12), to be prorated on $37,250.00 of insurance.”
Defendant has appealed from the judgment. Plaintiff has not prayed for an increase of the amount awarded by the jury.
According to the statement of defendant’s expert accountant, the actual total loss of the plaintiff amounted to $15,767.12. The jury fixed said loss at $15,757.12, and therefore must have adopted said statement as correct.
The amount of loss, according to plaintiff’s proof of loss, was $31,718.82, and, according to the petition, was $30,968.19. This claim of loss based on the inventory and books of the plaintiff exceeds the actual loss by nearly 100 per cent.
Besides errors in bookkeeping, the jury must have found, as contended by the defendant, that three certain items of cement, aggregating $6,050, appearing on the inventory of January 31, 1908, did not truly represent stock on hand at the time.
These three items on the inventory read as follows:
1000 (Bbls.) German Alsen 2.35.... $2,350 00
718 “ Old Stock Bafargue 2.80 2,010 40
4214 (Sacks) Atlas 1053% bbls...... 2,159 69
These entries exhibit marks of erasure and substitution of words and figures, and the footing at bottom of the page has been changed.
The president and the secretary-treasurer of the plaintiff company, when examined under oath in the office of the Adjustment Company, testified that these three items were correct to the best of their knowledge *941 and belief. The president stated that he had no personal knowledge of the items. The secretary, however, testified specifically that the 1,000 barrels of German Alsen cement were on hand when the inventory was taken, and, being asked if he was positive, replied:
“I am more positive of that than I am of anything in that book.”
A few days thereafter the insurance companies denied all liability.
The -item of German Alsen was written by the secretary over an erased entry of a small amount of another kind of cement.
The second item, as originally entered, read:
“118 (bbls.) Old Stock Lafargue.”
And afterwards the figure “7” was written over the first figure “1.” A corresponding change was made in the extensions.
The third item, as originally entered, read, “214 (Sacks) Atlas,” and afterwards the figure “4” was inserted before the figure “2,” and the extension figures were altered to correspond.
A photographic copy of page 147 of the inventory, on which the three entries appear, is in the record before us, and it is apparent to the naked eye that the original entries and extensions were changed.
It was conceded on the trial that the entry of “German Alsen” was erroneous, and the evidence shows that this item was included in the sworn proofs of loss, but was excluded in the account of loss sued on in this case. It was proven that the plaintiff had on hand only two barrels of German Alsen cement at the date of the inventory, and none at the date of the fire.
It is also shown by the evidence that the item of Old Lafargue cement was raised by 600 barrels, and the item of Atlas cement by 1,000 barrels. This conclusion necessarily results from the fact that there is a deficit of G05 barrels of Lafargue and l,0f)4% of Atlas cement, which cannot be accounted for on any reasonable hypothesis.
The expert accountant employed by the defendants testified that the three items of cement in question were “loaded” to the extent of 2,600 barrels, and that, in addition, all other cement items were short by 350%-There is no serious dispute as to the figures given by this accountant, and the secretary himself admits a very large apparent shortage in the cement account, which he endeavored to explain by loss in reworking damaged cement within the short period of four months. His explanations did not satisfy the jury, and certainly have made no favorable impression on this court.
The same accountant found errors in bookkeeping to a very large amount, and, finally, that the book value of the stock actually destroyed was $15,767.12, and the jury awarded that sum to the plaintiff company.
The only debatable question on this appeal Is whether or not the policies should be declared forfeited under the following stipulation written therein, to wit:
“Thé entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof, or if the interest of the insured in the property be not truly stated therein, or in case of fraud or false swearing by_ the insured touching any matter relating to this insurance, or the subject thereof, before or after a loss.”
If the inventory was “padded,” the intent must have been to deceive and defraud the insurance companies in the event of loss by fire. In the course of the cross-examination on the trial of the ease, the secretary was driven into the admission that- the cement was either “loaded” in the inventory, or was “lost” by waste in reworking. There is no evidence in the record to support the assertion that 1,600 barrels of cement was thus lost in the short period of four months, and the testimony of the president and the secretary that such a lo^s .might have occur *943 red within that time in the usual course of business is rebutted by the testimony of other dealers in the same line. The annual loss by waste of 6,400 barrels of cement would soon force any ordinary business concern into insolvency. There is no suggestion of any such depreciation in plaintiff’s proofs of loss or in the subsequent proofs prepared for the purposes of this suit, and plaintiff’s claim is based on the assumption that'all the cement on the inventory not sold in the usual course of business was on hand at the time of the fire.
The explanation of the item of 1,000 barrels of German Alsen cement is equally unsatisfactory. Plaintiff had only two barrels of this cement in stock on January 31, 1908. The secretary erased an original entry on the second line of page 147 of the inventory and inserted in lieu thereof “1,000 German Alsen 2.33 2,350.” The explanation that this entry was intended to cover 500 barrels of Eagle cement, and 500 barrels of Dromedary cement, just landed but not in the warehouse, is not plausible on its face, but ceases to be worthy of consideration in the face of the facts that the Eagle and Dromedary cements were entered at the foot of the same inventory, that the entry of German Alsen was not canceled or erased, and that the secretary swore a few months after the fire that he was positive that the German Alsen was on hand when the inventory was taken.
We consider that this case shows very clearly a fraudulent attempt to impose on the defendant insurance company by exaggeration of the loss.
An extended citation of authorities is not necessary to the decision of this case. See Regnier v. Insurance Co., 12 La. 336; Schmidt v. Underwriters, 109 La. 884, 33 South. 907; Claflin v. Insurance Co., 110 U. S. 81, 3. Sup. Ct. 507, 28 L. Ed. 76.
It is argued by counsel for plaintiff that a false swearing by the assured subsequent to the loss must be shown to be material to avoid the policy, and, if the company had knowledge of the facts, a false statement in regard thereto cannot reasonably deceive or mislead it. 1 Clement, Eire Insurance, 279, Rule 9. It is unnecessary to consider the doctrine thus announced, as the case is with the defendant on the question of fraud in the confection of the inventory.
The policy provides that a fraud of this kind shall not be held to have been waived by the insurer “by any requirement, act, or proceeding on its part relating to the appraisal or to any examination” therein provided for.
It is therefore ordered that the judgment below be reversed, and it is now ordered tha't plaintiff’s suit be dismissed, with costs in both courts.