**GULF INSURANCE COMPANY**

v.

**Revis Ray CHANDLER.**

**Civ. A. No. 7322.**

United States District Court
W. D. Louisiana,
Shreveport Division.
April 28, 1961.

Turner B. Morgan, Morgan, Baker, Skeels, Middleton & Coleman, Shreveport, La., for plaintiff.

R. J. Donovan, Jr., Love & Rigby, Shreveport, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

This is an action for a declaratory judgment, 28 U.S.C.A. § 2201 et seq., brought here under the Diversity Statute, 28 U.S.C.A. § 1332, plaintiff being a fire insurance company, domiciled at Dallas, Texas, and defendant being a citizen of Louisiana, domiciled in this District and Division.

The basis of the action is alleged fraud, and conspiracy to defraud, on the part of defendant, the named insured in two fire insurance policies issued to him by plaintiff, which plaintiff here seeks to be declared null *ab initio*. Defendant, of course, denies the charges, but has failed to file a brief in support of his position, although the allotted time for doing so long since has expired. The case having been tried on its merits, to the Court without a jury, and now being ready for decision, we proceed to set down our findings of fact and conclusions of law for the record.

Defendant, Revis Ray Chandler, and one Lavelle Baker have been close friends since childhood. At various times during the years preceding the events herein described, they had been associated in business with one another. In all respects they were very close, in friendship and in business.

On April 28th, 1958, Baker acquired by deed from W. I. Lynch title to Lot 5 of Hill Top Acres Subdivision, in Bossier Parish, Louisiana, for a price of $1,000. Prior to this, one Leo Bley had purchased from Lynch the title to Lot 5 of Hill Top Acres, *Unit No. 2,* and had contracted with Baker for the latter to erect a residence on the property, which had been substantially completed when Baker acquired his vacant lot, located approximately a quarter of a mile away from the Bley property.

Shortly after acquiring his lot, Baker made application to Frank Graham, a loan broker in Shreveport, for a mortgage loan in the sum of $4,000 upon his lot, representing to Graham that he had a practically completed residence built upon it, although at that time Baker's lot was completely vacant. He went with Graham's appraiser, Preston J. Miller, to show him the property, but pointed out Bley's residence, instead of his vacant lot, as the property to be mortgaged. As the result of this inspection, Miller reported to Graham that the house and lot were worth approximately $12,500 and thus would support a loan of $4,000, as applied for. No survey was made.

The loan to Baker by Graham was closed on May 21st, 1958, after a title examination by Graham's attorney was made, this, of course, failing to disclose that Baker's lot was vacant, unimproved property. Immediately before the loan was consummated, Graham required Baker to sign the following letter:

"Mr. Frank Graham
"531 Market Street
"Shreveport, Louisiana

"Re: Lot 5, Hilltop Acres
"Subdivision, Bossier
"Parish, Louisiana,
and improvements.

"Dear Mr. Graham:

"The purpose of this letter is to state that I am the owner of the house located on the captioned lot, that the house has been completed, and that all bills for labor and materials have been paid in full.

"I am making this representation to induce you to purchase a first mortgage note on the property in the amount of $4,000.00, dated May 8, 1958, executed by Lavelle E. Baker.

"Very truly yours,
"/s/ Lavelle E. Baker
"Lavelle E. Baker"

When this letter was signed, and Baker received the proceeds of the loan, no construction had been started on Baker's lot, and Graham did not learn of the fraud until some time after October 5, 1958.

On June 23, 1958, Baker placed a second mortgage on the lot in favor of defendant, Chandler, in the sum of $11,000, this being allegedly for a prior indebtedness owed by Baker to Chandler, but in truth and fact it was a mere sham, to protect the property from the claims of Baker's creditors.

In August, 1958, Baker began construction of a so-called dwelling house on his lot, purportedly as a home for Chandler. Chandler participated regularly in the construction, throughout its course, and was thoroughly familiar with its shoddy nature.

In the words of the Deputy State Fire Marshal, who investigated the case, it was "a house built to be burned," and it literally was that. Concrete blocks, bought on credit by Chandler, were used for a foundation, but they were placed right on the ground instead of upon underground concrete footings. Some of the blocks were placed on end, contrary to accepted building practices. Instead of using 6″ x 6″, or 6″ x 8″ sills, 2″ x 6″ boards were used. The floor joists were of 2″ x 6″ lumber placed on 4-foot centers, instead of 2 feet apart, or less, which should have been done. There was no sub-floor, and the building was not properly braced. When a person walked across the floor, it bounced up and down. For roofing, no felt paper or asphalt shingles were used, but simply 90-pound roll roofing, of the cheapest type.

All of the cheap materials incorporated in the house were bought on credit, and so far as the record discloses, have never been paid for. Although the house was supposed to be for Chandler and his family, he never took his wife to see it. Only a few articles of virtually worthless second-hand furniture, and a handful of clothing, were moved into the house by Chandler.

On September 15, 1958, Baker and Chandler went to the office of Frank Graham, where an attempt was made to obtain an increase in the $4,000 loan previously made to Baker. Meanwhile, on August 26, 1958, Chandler had cancelled his $11,000 second mortgage, voluntarily and without any consideration. The attempted new loan was refused by Graham. His attorney then was requested to prepare a deed from Baker to Chandler, covering Baker's lot, reciting a cash consideration of $8,500, and the assumption of the existing $4,000 loan. No cash was ever paid by Chandler to Baker. The deed was drawn by the attorney, and executed by the parties, but at no time was the attorney informed by either Baker or Chandler that they were then dealing with an entirely different house which no appraiser had ever seen.

At that point, Gus Boucher, local agent for plaintiff, Gulf Insurance Company, was called to the attorney's office. Not then realizing the fraud which had been practiced by Baker, the attorney gave Boucher the information in his files concerning the appraisal, the location of the property and the type of construction, this information actually pertaining to the Bley residence, all in the presence of both Chandler and Baker, who remained silent.

At first, Chandler asked Boucher to write a $15,000 policy on the dwelling, and $5,000 on its contents, but, after some discussion, it was agreed that the policies would be, respectively, in the sum of $12,500 and $3,000, and they were written in those amounts. Of course, had Boucher been given the true facts, it is obvious that these policies never would have been written and delivered to Chandler.

Less than three weeks later, on October 5th, 1958, the building was burned to the ground, and we believe this was done either by or at the behest of Chandler and Baker, who hoped to collect the proceeds of the policies and divide them between themselves. Under these circumstances, we have no alternative but to find that there was deliberate fraud committed by Chandler and Baker upon the insurance company, in obtaining the issuance of the policies here involved and that, consequently, the policies were null and void *ab initio*. Therefore, plaintiff is entitled to have them annulled and declared of no force or effect

342

from their inception. (The premium of $107.95, paid by defendant, has been deposited by plaintiff into the registry of the Court, and defendant may recover this.) LSA–C.C. arts. 1776, 1779 and 1819; LSA–R.S. 22:691; 45 C.J.S. Insurance § 491; Aubert v. Thibodeaux Benevolent Association, 6 La.App. 569; Carruth v. State Farm Mutual Automobile Insurance Co., La.App., 113 So.2d 56; Germier v. Springfield Fire & Marine Insurance Co., 109 La. 341, 33 So. 361; Richard D'Aigle Co. v. Western Insurance Co., 136 La. 777, 67 So. 827; Alfred Hiller Co. v. Insurance Co. of North America, 125 La. 938, 52 So. 104, 32 L.R.A.,N.S., 453.

A proper decree should be presented for signature.