LOTTINGER, Judge.
This is a suit for a declaratory judgment instituted by plaintiff-appellee, St. Paul Fire and Marine Insurance Company (sometimes hereafter referred to as insurer), against 'Mrs. Florence E. St. Clair (sometimes hereafter referred to as insured), defendant-.appellant, to have a certain policy of fire insurance, issued by the insurer to the ■insured, declared null and void. The defendant-appellant filed an answer and re--conventional demand for judgment against tthe insurer for $10,000.00, the face amount • of the insurance policy, interest, penalties at 12%, and for reasonable attorney fees.
The record shows that on March 8, 1962, for the sum of $2,000.00, Mrs. Florence 'E.. St. Clair acquired two certain lots of •ground, more particularly described as being Lots Seven (7) and Eight (8) of the Beers "Tract to the Town of Berwick, together ■with all buildings and improvements there-on situated. It is a building, a duplex rent house, renting at $10.00 per month •per side, located on this property, which is the subject in this lawsuit. This prop- • erty is more commonly referred to as 409 .St. Clair Avenue, Berwick, Louisiana.
On September 21, 1962, Albert Fuselier, .a Deputy State Fire Marshal (hereafter ■sometimes referred to as fire marshal), inspected the premises at 409 St. Clair Avenue. His report, which was filed with the State Fire Marshal, stated that the premises disclosed “certain fire and life "hazards”. The report further stated that the building was in a deteriorated or poor ■physical condition, and ordered the owner, listed on the report as Florence St. Clair, to repair the building and clean up the yard of all combustible material, including the grass. The fire marshal testified that since there were people living in the house, •he ordered corrections to be made.
On September 27, 1962, after having received the notice from the fire marshal .as to the making of certain corrections to :the property located at 409' St. Clair Avenue, Berwick, Louisiana, the insured applied, through her daughter, Miss Florence St. Clair, by means of a telephone call, with Mrs. Lila B. Hindmon, for the insurance policy. Mrs. Hindmon testified that she did not remember who first mentioned the value of the policy, but did state, “If I remember right, I asked her how much the house was worth or if it was worth as much as ten thousand dollars and I assume that she said it was since the policy was issued for that much.” Mrs. Hindmon, the local agent, neither asked about any fire hazards nor was she told about the fire marshal’s inspection and the notice received by Mrs. St. Clair. At the time that the policy was issued, the premises were vacant and this was conveyed to Mrs. Hindmon, but Mrs. Hindmon was told that repairs were going to be made to the house before it was re-rented.
On October 26, 1962, and February 1, 1963, the fire marshal again inspected the premises at 409 St. Clair Avenue, Berwick, Louisiana, and on both occasions found that no corrections had been made. He again sent out similar reports to the State Fire Marshal and to Mrs. Florence St. Clair, as he had done on September 21, 1962. The property owner did not reply to these notices.
The fire marshal inspected the property on March 29, 1963, and again determined that no corrections had been made, and also determined that the premises were vacant. Because of the vacancy, the fire marshal sent a notice ordering the demolition of the building. His report contained the following added typewritten paragraph, “Building at captioned address found to be in a dangerous condition and unsafe. This building shall be demolished. Yard shall be cleaned of all combustible materials, including grass.” He again received no reply from the owner. The next time the fire marshal heard anything about the premises was on June 5, 1963, when the Berwick Fire Chief notified him that the building had burned.
*824 Mrs. Hindmon testified that she was not informed of the subsequent notices of the premises being a fire hazard, or that the premises were ordered to be demolished.
Counsel for plaintiff-appellee placed into the record, as an offer of proof, the proposition that if Mrs. Hindmon, the local agent, or any other responsible insurance agent had known of the first report of the fire marshal, the policy of insurance would not have been issued, and that if knowledge would have been obtained of the subsequent reports, the policy would have been canceled. Plaintiff-appellee was also prepared to produce two insurance agents who would testify similarly, and made similar offers as to these two insurance agents.
The Lower Court held in favor of plaintiff and against the defendant, from which judgment defendant has perfected this appeal.
Defendant-appellant has set forth various specifications of error on the part of the Trial Court, which specifications will be separately discussed. As to the specification that the Trial Court erred in finding as a fact that “(a) the defendant knowingly and willfully overvalued the house which was insured by the plaintiff,” the record most certainly bears the Lower Court out. The owner of the property was familiar with similar properties in this area, as she owned several houses which were each insured for $2,000.00 of fire and extended coverage. The defendant had purchased the property in question on March 8, 1962, for $2,000.00, and on September 27, 1962, without having made any sort of repairs to the property which she had purchased, obtained an insurance policy for $10,000.00. We are of the opinion, that where an assured has purchased a piece of property for $2,000.00, and then without making any repairs one bit whatsoever, and less than six months later purchases insurance in the amount of $10,000.00 on that particular piece of property, the Trial Judge is certainly correct, proper and not in error in holding that the assured has knowingly and willfully overvalued the property which was insured.
It was further alleged that the Court erred in finding as fact that the insurance agent, Mrs. Hindmon, did not remember who suggested that the policy be written for $10,000.00. We feel that the record bears out the fact that the insurance agent merely suggested a figure, and that this figure was readily and willingly accepted by the daughter, acting as agent for her mother. Mrs. Hindmon, the insurance agent, testified as to her conversation with Miss Florence St. Clair, the daughter, as follows:
“Q. And what did she tell you?
A. She told me that her mother had purchased some more property and they wanted to insure the house.
Q. Do you recall whether or not she told you they had just purchased it?
A. Well, I believe she did, as well as I can remember.
Q. And what else did she tell you?
A. Well, I asked her how much the house was worth and she told me at first she didn’t know, that it was built out of this old time cypress, and I don’t remember positively whether she suggested the figure or I did. If I remember right, I asked her how much the house was worth or if it was worth as much as ten thousand dollars and I assume that she said it was since the policy was issued for that much.
Q. You told her that it was issued for ten thousand dollars and it was understood that time — I am talking about the telephone conversation ?
A. Well, I agreed to issue the policy for that amount.”
Therefore, we feel that there can be no> question that the insurance agent merely suggested the figure of $10,000.00, that the *825 'property owner more than willingly accepted this figure knowing that this was a gross overvaluation of the property, and that the Trial Court did not err in finding as a fact that the insurance agent did not remember who suggested that the policy he written for $10,000.00, because it is obvious from the testimony of the insurance agent that she was not definite as to who had suggested the figure of $10,000.00 and furthermore, she prefaced her remarks with, “If I remember right, * * * ”
The second specification of error will be discussed in conjunction with the fourth specification of error.
As to the third specification of error, i. e., "“The Trial Court erred in finding as a fact that the property was not insured until Mrs. St. Clair received notice from the State Fire Marshal that the house was a danger and a menace and would have to be demolished”, we find no error on the part of the Trial Court, as would require a reversal ■of the judgment of the Lower Court.
Miss St. Clair testified on the trial of this case that she could not remember whether she received the notice from the fire marshal prior to or subsequent to the purchase of the insurance. At this point, ■counsel for plaintiff-appellee, who was questioning Miss St. Clair under cross examination, refreshed her memory as to a deposition taken from her, wherein she Fad affirmatively stated that the notice was received prior to the purchase of the insurance. When presented with this statement, Miss St. Clair testified that she could not remember having made it, that at the time the deposition .was taken, she was in shock. All that she could say while on the witness stand was that she could not remember when she got the notice, as to it being before or after the purchase of insurance. Considering the fact that the 'Trial Judge heard the testimony of Miss St. Clair, and saw the witness while she was under oath, we feel that the Trial Judge •was in a much better position to judge this particular witness and that he committed no error in finding that the notice had been received prior to the purchase of the insurance.
The defendant-appellant, as a second and fourth specification of error, alleged the Trial Court erred in “2. Finding as a fact that: (a) the house was overvalued and overinsured by the issuance of the $10,000.00 policy; (b) that overvaluation and the purchase of an excessive amount of insurance constitutes fraud and will void the valued fire policy law; * * * 4. Failing to apply the valued fire policy law of this state to the facts of this case and by misconstruing and erroneously applying the doctrine of the Gamier and Welch cases.”
The defendant-appellant in support of these specifications of error alleges that “there is no evidence in the record of these proceedings to establish the value of the insured property.” The Lower Court allowed the introduction of evidence as to the value of the property subject to the objections of counsel for defendant-appellant. On several occasions, the Lower Court stated that it was not clear as to the law in the particular area of the “valued fire policy” and therefore, was allowing the introduction subject to the objection. We can find no error on the part of the Trial Judge in allowing the introduction of evidence subject to the objection, so that the Trial Judge would have the evidence before him, if he later determined that the evidence was material and admissible.
Where an insured overestimates the value of his property through mistake or inadvertence, the overvaluation does not amount to fraud sufficient to void the policy, and as such, the converse must follow, that if an overvaluation is made by the insured willingly and knowingly and not through error of judgment or inadvertence, the overvaluation is sufficient to afford grounds for an avoidance of the policy. We feel that the Lower Court was correct in interpreting this as the rule of Garnier *826 v. Aetna Insurance Company of Hartford, Conn., 181 La. 426, 159 So. 705, and Welch v. New York Underwriters Insurance Co., 145 So.2d 376 (La.App. 3rd Cir., 1962), which rule is set forth in Welch v. New York Underwriters Insurance Company, supra, 380, as follows:
“Even if the statements made by Mrs. Welch to the agent should be interpreted as an overvaluation of the house, we think such overvaluation was made through error of judgment or inadvertence, and it was not sufficient to void the policy. In that connection, the Supreme Court, in the case of Garnier v. Aetna Insurance Company of Hartford, Conn., 181 La. 426, 159 So. 705, held that, ‘Where an assured overestimates the value of his property through mistake or inadvertence, the overvaluation does not amount to fraud sufficient to void the policy.’ Also, the U. S. District Court for the Western District of Louisiana, in Hinson v. British America Assurance Company, 43 F.Supp. 951, quoted with approval the following statement found in American Jurisprudence:
" ‘ “ * * * In some of the cases it has been said that an overvaluation made by the insured through error of judgment or inadvertence is, in effect, merely an expression of opinion which affords no ground for an avoidan’ce of the policy, and will not cause a forfeiture thereof.” ’ (29 Am.Jur., Insurance, Sec. 1132).”
The property in question was purchased on March 8, 1962, for the sum of $2,000.00 and was then insured on September 27, 1962, less than six months later, for the sum of $10,000.00. The fact that it was the insurance agent who first brought up the amount of $10,000.00 is immaterial, as far as we are concerned, because the insurance agent testified that at first, Miss St. Clair stated that she did not know how much the house was worth and we feel, as did the Lower Court, that the insurance agent was merely prodding Miss St. Clair as to a figure, and did not therefore suggest that the figure of $10,000.00 be placed om the house. For an individual to purchase a building and the property for $2,000.00,. to not make any repairs thereon, and then less than six months later to insure the-property for $10,000.00, we feel that this, is not an error of judgment or inadvertence.. Miss St. Clair, as the daughter of Mrs.. Florence E. St. Clair, handled her mother’s, business transactions, and therefore we feel,, as we assume the Lower Court felt, that. Miss St. Clair either knew or she should, have known that the property was not worth anywhere near the figure of $10,000.00, and' therefore, allowing or by passively agreeing-to allow the figure of $10,000.00 to be-placed on the property, was a gross overvaluation of the property. The introduction, of evidence as to the value of the property-at the time that it was purchased is certainly material and relevant to show that: there was a gross overvaluation of the-property, and such an overvaluation of the-property as to void the policy. The Trial! Judge certainly has the prerogative and discretion to admit evidence subject to ant objection during the trial of a case, and then after taking the case under advisement,, to consider the law as relative to the evidence attempted to be introduced, and if' finding the evidence admissible, to them use this evidence in reaching his decision.
The insurance policy in question,, as is consistent with LSA-R.S. 22:691, contains the following clause, “This entire-policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact, or circumstance concerning this insurance- or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto”. To void a policy under this-provision, the insurer must establish that there was willful concealment or misrepresentation of fact, and that the concealment or misrepresentation of fact related to a material fact or circumstance concerning the insurance or the subject thereof. This *827 rule is stated in 46 C.J.S. Insurance § 1316b(4), as follows:
“As a general rule, if defendant relies ■on false or fraudulent statements or representations on tlie part of insured in ■procuring the insurance, in order to avoid the policy or liability thereon, it has the burden of proving such facts. Where such elements are regarded as essentials, •defendant also has the burden of proving that the misrepresentations were made 'by insured with knowledge of their falsity, and with a fraudulent intent to mislead •or deceive, and that they were material ■to the risk, and were relied on by defendant and acted as an inducement to it ■to issue the policy; * *
Our brethren of the Third Circuit in Welch v. New York Underwriters Insurance Company, supra, 145 So.2d 379, in referring :to the above rule stated as follows:
“In our opinion the general rule herein-.above stated applies in this state. See LSA-R.S. 22:692 (dealing specifically -with misstatements in fire insurance applications); Knowles v. Dixie Fire Ins. Co. of Greensboro, N.C., 177 La. 941, 149 So. 528, 529 (fire insurance); Gay v. United Benefit Life Insurance Company, 233 La. 226, 96 So.2d 497 (health and accident insurance); General Finance Company of Louisiana v. Universal Automobile Ins. Co., 19 La.App. 333, 139 So. 48 (automobile insurance); Parker v. Hartford Fire Ins. Co., La.App.Orl., 163 So. 435 (fire insurance); Rickerfor v. Westchester Fire Ins. Co. of New York, La.App.Orl., 186 So. 109, reinstated on rehearing, La.App., 187 So. 676 (fire insurance); American Indemnity Co. v. Newson, La.App. 2 Cir., 79 So.2d 392 (fire insurance); Kennison v. U. S. Letter Carriers’ Mutual Benefit Ass’n, La.App. 1 Cir., 132 So.2d 94 (health and accident insurance); Niagara Fire Insurance Company v. Everett, 292 F.2d 100 (5 Cir., 1961) (fire insurance); 4 Appleman on Insurance, 465-470; 29 Am. Jur. (Insurance), Secs. 694, 700, 702; 29A Am.Jur., Sec. 868.”
The insurance agent was at no time ever informed that a Deputy State Fire Marshal had issued a notice to the property owner that the .property was a fire hazard. On the trial of this case, counsel for plaintiff-appellee made a formal offer of proof to the effect that Mrs. Hindmon would testify that had she known of the fire marshal’s initial inspection and report, neither she nor any reasonably prudent insurance agent would have issued the policy, and that she would have canceled the policy had she known of the subsequent inspections and reports and orders of condemnation and demolition, all because of the substantial increase in the moral and physical hazard. Substantially the same offer of proof was made as to two insurance men who were to have been called by plaintiff, but the Lower Court felt that it could take judicial notice that an insurance company would not have issued a policy if it would have known all of the facts beforehand, and would have canceled the policy on subsequent knowledge. We feel that the Lower Court was correct in taking judicial notice of these facts.
A prospective insured has a duty to inform the insurer of all facts which might be used in determining whether the insurance policy will be written. In this particular situation, the fact that the fire marshal had issued a notice of a fire hazard prior to the application for insurance was certainly material as to whether the insurance policy would have ultimately been issued. Had the insurance agent known of this notice, the policy would not have been issued. There is not only a duty to inform prior to the issuance of the policy, but also a continuing duty to inform during the existence of the policy. The risk is no less after the policy has been written than before, and it follows, that the duty to fully inform can be no less after the writing of the policy than before. In Walden v. Louisiana Insurance Company, 12 La. 134, *828 the Court held that “The underwriter has an undoubted right to be informed of every circumstance, which, creating or increasing the risk against which insurance is sought, may induce him to decline the insurance, or demand a higher premium.”
It is provided by LSA-R.S. 22:692, that:
“No policy of fire insurance issued by any insurer on property in this state shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy or in the application therefor. Such breach shall not avail the insurer to avoid liability unless such breach (1) shall exist at the time of the loss, and be either such a breach as would increase either the moral or physical hazard under the policy, or (2) shall be such a breach as would be a violation of a warranty or condition requiring the insurer to take and keep inventories and books showing a record of his business. Notwithstanding the above provisions of this Section, such a breach shall not afford a defense to a suit on the policy if the fact or facts constituting such a breach existing at the time of the issuance of the policy and were, at such time, known to the insurer or to any of his or its officers or agents, or if the fact or facts constituting such a breach existed at the time of the loss and were, at such time, known to the insurer or to any of his or its officers or agents, except in case of fraud on the part of such officer or agent or the insured, or collusion between such officer or agent and the insured. Amended and reenacted Acts 1958, No. 125.”
The breach must exist at the time of the loss, and “be either such a breach as would increase either the moral or physical hazard under the policy”.
The defendant-appellant breached the provisions of the policy in willfully concealing the notice of fire hazard from the fire marshal, and in misrepresenting the value of the property. It is not sufficient that there merely be a breach, but the breach “shall exist at the time of the-loss.” It is not a requirement of LSA-R.S. 22:692 that the breach occur at the-time of the loss, but that it exist at the-time of the loss. A continuing breach-can occur some time prior to the loss, and' yet, still be an existing breach at “the time-of the loss”. The insurance agent in this-instance was not informed of the notice-from the fire marshal. Because the property was never improved, repaired or cleaned up sufficiently to take it out of the “fire hazard” category, the breach of the policy provisions in not informing the insurance agent of the initial notice was a continuing breach, which continued until the building was destroyed by fire.
It is also provided in LSA-R.S. 22:692, that the breach be one “as would increase either the moral or physical hazard under the policy”. An “increase in the physical hazard” simply means that there is-an increased likelihood of fire to the premises beyond that of ordinary property without any special fire hazards. It is,, therefore, obvious, that a notice from the fire marshal that the property is a fire hazard would constitute, where the condition has not been corrected as of the time-of loss by fire, an increase of the physical' hazard.
We feel, as did the Lower Court, that plaintiff has proved his case and met all of the requirements of the law, and, therefore, accordingly, the judgment of the Trial' Court is affirmed at defendant-appellant’s-cost.
Judgment affirmed.