MAMCO, INC., d/b/a Aamco Transmission Co., & Paul Mathieson, Plaintiffs-Appellees,

The Ouachita National Bank in Monroe, Intervenor-Appellee,

v.

AMERICAN EMPLOYERS INSURANCE CO., Defendant-Appellant.

No. 83–4304.

United States Court of Appeals, Fifth Circuit.

July 12, 1984.

Rehearing Denied Aug. 13, 1984.

Cook, Yancey, King & Galloway, Steven H. Beadles, John D. Collinsworth, Shreveport, La., for defendant-appellant.

Bruscato, Loomis & Deal, Anthony J. Bruscato, Philip T. Deal, Monroe, La., for Mamco.

Hudson, Potts & Bernstein, Walter Lee Perkins, Jr., Monroe, La., for Ouachita.

Before WISDOM, REAVLEY, and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

This diversity case controlled by Louisiana law concerns a suit on a fire insurance policy issued by the American Employers Insurance Co. to the plaintiffs, Paul Mathieson and MAMCO, Inc. The insurance company appeals the district court's entry of judgment on a verdict for the plaintiffs. We reverse and remand for a new trial.

## I.

The fire insurance policy issued by American Employers to the plaintiffs provided coverage for an automobile transmission repair garage that Paul Mathieson owned and operated.[1] The coverage of the policy was as follows:

| | |
|---|---|
| (1) Contents of garage | $160,000 |
| (2) Loss of earnings | 36,000 |
| (3) Extra expense | 10,000 |
| TOTAL | $206,000 |

On April 12, 1981, the contents of the garage were severely damaged in a fire. On May 18, Mathieson submitted a proof of loss to the defendant setting forth a total claim of $231,212.68. This total comprised three components: (1) $185,212.68 for lost inventory, furniture, and fixtures,[2] (2) $36,000 for lost earnings, and (3) $10,000 for additional expenses incurred as a result of the fire. A letter from the plaintiffs' counsel, dated May 21, asserted a claim to the full coverage of the policy ($206,000). American Employers refused to pay the claim, and Mathieson brought suit in a Louisiana state court. On the basis of the parties' diversity of citizenship, the insurance company removed the action to the United States District Court for the Western District of Louisiana.

The case proceeded to trial before a jury. After the close of the evidence, the insurance company requested that the court include in the jury charge an instruction on the defense of material misrepresentations by a claimant. The court refused to give

---

1. The business was incorporated under the name of MAMCO, Inc. It held a franchise from AAMCO Transmission Co. and therefore did business under the AAMCO name.

2. The actual claim for lost contents, $185,462.68, was offset by a $250 deductible.

this instruction, and the company made a timely objection to that ruling. The jury returned a verdict for the plaintiffs and awarded $150,000 in damages—$125,000 for loss of contents, $20,000 for loss of earnings, and $5,000 for additional expenses. The jury also found that the insurance company's refusal to pay the plaintiffs' claim was arbitrary and capricious. Because of this finding, the court assessed against American Employers the statutory penalty of the plaintiffs' reasonable attorney's fees plus 12 percent of the damages.[3]

The insurance company filed a motion for judgment notwithstanding the verdict or for a new trial. The court denied the motion and entered judgment on the verdict. The company appealed.

## II.

American Employers challenges two aspects of the district court's judgment. First, the company contends that the court committed reversible error by refusing to instruct the jury on the defense of material misrepresentations. Second, the company argues that there was insufficient evidence to support the jury's finding that it acted arbitrarily and capriciously in refusing to pay the plaintiffs' claim. We agree with the first contention and therefore reverse and remand for a new trial. Our disposition of the first issue renders it unnecessary to address the second.[4]

## III.

The contract between the parties includes the following standard[5] provision:

"Concealment, fraud. This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

The insurance company asserts on appeal, as it attempted to prove at trial, that Mathieson deliberately inflated the value of the lost inventory in the proof of loss that he submitted. The company asserts that the district court erred by refusing to instruct the jury that such actions on Mathieson's part would defeat his right to recovery. The plaintiffs contend that the district court acted correctly, because the evidence would not have supported a jury finding that Mathieson acted with any intent to deceive the defendant. We agree with American Employers.

■■■ It is well established from decisions interpreting the quoted contractual provision that deliberate and material misrepresentations by a claimant concerning the value of his loss, if made with the intent to deceive the insurer, will void the insurance contract and preclude the claimant from receiving any recovery. *See Breeland v. Security Insurance Co.,* 5 Cir. 1969, 421 F.2d 918, 920–21; *Hinson v. British American Assurance Co.,* W.D.La. 1942, 43 F.Supp. 951, 962; *Garnier v. Aetna Insurance Co.,* 1935, 181 La. 426, 159

**3.** Section 22:658 of the Louisiana Statutes provides:
"Failure to [pay an insurance claim] within sixty days after receipt of [satisfactory proofs of loss] and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, ... together with all reasonable attorney's fees for the prosecution and collection of such loss. ..."
La.Rev.Stat.Ann. § 22:658 (West 1978).

**4.** The record discloses evidence that the defendant acted reasonably in refusing to pay the

plaintiffs' claim. There are Louisiana cases, similar to the present one, in which the courts have held that insurance companies should not be liable for the penalty provided by § 22:658. *See Young v. State Farm Fire & Casualty Ins. Co.,* La.Ct.App. 1 Cir.1983, 426 So.2d 636, 645, *cert. denied,* La., 433 So.2d 148, 171; *Wallace v. State Farm Fire & Casualty Ins. Co.,* La.Ct.App. 2 Cir.1977, 345 So.2d 1004, 1009, *writ refused,* La.1977, 349 So.2d 334.

**5.** This provision is taken from the "standard fire policy" form sanctioned by Louisiana statutory law. *See* La.Rev.Stat.Ann. § 22:691, at 509 (West 1978).

So. 705, 707; *Alfred Hiller Co. v. Insurance Co. of North America*, 1910, 125 La. 938, 52 So. 104, 106; *Schmidt v. Philadelphia Underwriters*, 1903, 109 La. 884, 33 So. 907, 910; *Sims v. Equitable Fire & Marine Insurance Co.*, La.Ct.App. 4 Cir. 1964, 170 So.2d 163, 166. Because the district court refused to instruct the jury on this defense, we must reverse if there was sufficient evidence, viewed in the light most favorable to the insurance company, for the jury to have found that Mathieson made such misrepresentations. *See Don Burton, Inc. v. Aetna Life & Casualty Co.*, 9 Cir.1978, 575 F.2d 702, 706; *Japhe v. A-T-O Inc.*, 5 Cir.1973, 481 F.2d 366, 372. The parties do not dispute that the alleged misrepresentations concerned a material fact.[6] Consequently, the resolution of this appeal turns on whether there was substantial evidence that Mathieson deliberately misrepresented the value of lost inventory with intent to deceive the defendant.

Louisiana courts have recognized that there is rarely direct evidence of intent to deceive. Such intent, therefore, must often be inferred from circumstances that create a reasonable assumption that the claimant was aware of the falsity of his representations. *See Cousin v. Page*, La. 1979, 372 So.2d 1231, 1233; *Davis v. State Farm Mutual Automobile Insurance Co.*, La.Ct.App. 4 Cir.1982, 415 So.2d 501, 503. Several items of evidence in this case imply that Mathieson misrepresented the value of his lost inventory with the requisite intent to deceive.

First, Mathieson did not produce any accurate records of his inventory. The only available books and records of the corporation valued the inventory at $6,383.07, but Mathieson testified that he had deliberately understated this figure to reduce his federal income tax liability. The fire destroyed the invoices that would have established the cost of the inventory.

Second, Mathieson admitted that he had listed several items of inventory on his proof of loss even though he knew that they had not been destroyed in the fire. Another witness placed the value of these items at $9,112.98.

Third, Mathieson's claim grossly overstated the value of the lost inventory. The proof of loss set this figure at $162,965.16.[7]

---

**6.** Any question concerning materiality in the present case is foreclosed by *Alfred Hiller Co. v. Insurance Co. of N. Am.*, 1910, 125 La. 938, 52 So. 104. In that case, the Louisiana Supreme Court rejected the argument that, because "a false swearing by the assured subsequent to the loss [concerning the value of the loss] must be shown to be material to avoid the policy, [then,] if the company had knowledge of the facts, a false statement in regard thereto cannot reasonably deceive or mislead it". 52 So. at 106. The basis for the court's holding was a provision in the contract that the insurer would not be considered to have waived the defense of fraud because of "any requirement, act, or proceeding on its part relating to the appraisal or to any examination" of the insured property. *Id.* The insurance policy at issue in the present case contains essentially the same provision.

In any event, the usual understanding of "materiality" cannot apply to a situation such as that now before us. The question of materiality generally arises in a context in which a deceiving party has induced a deceived party to undertake some act of detrimental reliance. In this context, "materiality" expresses the notion that the deceived party would have acted differently had he known the truth about the fact misrepresented. *See Davis v. State Farm Mut. Auto. Ins.*

*Co.*, La.Ct.App. 1 Cir.1982, 415 So.2d 501, 504; *St. Paul Fire & Marine Ins. Co. v. St. Clair*, La.Ct.App. 1 Cir.1966, 193 So.2d 821, 827–28, *writ refused*, 1967, 250 La. 375, 195 So.2d 646. In the present context, the claimant's misrepresentation is not a basis for recovery, but a justification for the insurer's *refusal to take action*. The traditional concept of materiality is inapplicable in this context, because the insurer has not been induced to act. The claimant's *attempt* to deceive the insurer justifies the insurer's refusal to pay. *See Alfred Hiller Co. v. Insurance Co. of N. Am.*, 1910, 125 La. 938, 52 So. 104, 106; *Schmidt v. Philadelphia Underwriters*, 1903, 109 La. 884, 33 So. 907, 910. In this situation, "materiality" simply embodies the understanding that the misrepresentation concerns a fact that significantly affects the rights or obligations of the insurer. The alleged misrepresentation in this case—overstatement of the claim by $40,000 to $70,000 (*see infra* pp. 189–191)—cannot be considered insignificant.

**7.** The proof of loss stated that the contents of the garage that were destroyed were worth a total of $185,462.68. This total includes an undisputed $22,497.52 worth of supplies and equipment. The remainder—$162,965.16—represents the asserted value of the inventory.

At trial, the plaintiffs' own expert witness testified that the lost inventory was worth $123,231.74.[8] The company's expert estimated that the lost inventory was worth $93,312.69. The jury adopted a middle figure of approximately $103,000.[9] The proof of loss thus overstated the value of lost inventory by at least $40,000 and possibly as much as $70,000. The fact of overvaluation alone is certainly not dispositive; measuring the value of a large number of goods lost in a fire is a difficult and uncertain task, and some discrepancies are to be expected. Nevertheless, "even though [gross] overvaluation is not considered to furnish conclusive proof of fraud, it does raise a very strong presumption thereof". *Sims v. Equitable Fire & Marine Insurance Co.*, La.Ct.App. 4 Cir.1964, 170 So.2d 163, 166.

In two cases similar to this one, Louisiana courts found the evidence sufficient to support a finding that the plaintiff was guilty of intentional misrepresentation. In *Sims v. Equitable Fire & Marine Insurance Co.*, many of the relevant records had been destroyed in the fire, and the claim for lost inventory was markedly inflated. The court of appeals affirmed the trial court's dismissal of the complaint. In *Alfred Hiller Co. v. Insurance Co. of North America*, 1910, 125 La. 938, 52 So. 104, the plaintiff had grossly overvalued his loss and had included in his proof of loss several items of inventory that were not on hand at the time of the fire. The Louisiana Supreme Court reversed a judgment for the plaintiff and ordered the trial court to dismiss the complaint. These decisions make it clear that, under the facts of the present case, the defense of material misrepresentations at least should have been presented to the jury.

The district judge recognized that there was evidence implying that Mathieson had deliberately misrepresented the value of his loss. The judge refused to give the requested instruction, however, on the ground that it was not possible that Mathieson intended to deceive the insurance company when he knew that the company would scrutinize the claim very closely. This type of reasoning should have been left for the jury's consideration. Viewed in the light most favorable to the defendant, the evidence was sufficient to support a finding of intentional misrepresentation. The district judge committed reversible error by refusing to instruct the jury on this defense.

## IV.

The district judge's refusal to instruct the jury on the defense of material misrepresentations by a claimant entitles the defendant to a new trial with correct jury instructions.

We REVERSE and REMAND for a new trial.

---

**8.** The plaintiffs' expert actually testified that the figure was $128,661.68. It was later determined that, as the result of an arithmetical mistake, this witness had overstated the figure by $5,429.94.

**9.** This rounded figure is derived by subtracting $22,497.52 (the uncontested value of lost supplies and equipment) from the $125,000 award for loss of contents.